Filed 1/31/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| Guardianship of C.E., a Minor. | H045427<br>(Santa Cruz County<br>Super. Ct. No. 16PR00175) |
| S.H.,<br><br>     Petitioner and Appellant,<br><br>     v.<br><br>M.M. et al.,<br><br>     Objectors and Respondents. | |

Appellant S.H.[1] appeals the trial court's order denying her petition to remove Respondents B.M. and M.M.[2] as guardians of her nephew, C.E., and to name her as C.E.'s guardian. Appellant raises five challenges to the order on appeal: the trial court erred when it failed to consolidate the guardianship action with the adoption proceeding; the judge assigned to the guardianship proceedings "sabotage[d]" her adoption petition and prejudged the petition for removal of the guardians; the assigned judge should have disqualified himself under Code of Civil Procedure section 170.1; the trial court misinterpreted Probate Code section 2650; and the trial court abused its discretion by denying the petition to remove Respondents as guardians. We agree the court erred in

---

[1] Appellant filed the proceedings in the trial court, and noticed this appeal, with her husband, A.H. A.H. passed away before briefing in the instant appeal, leaving Appellant as the sole appellant.

[2] To protect the privacy of the minor child, we refer to the parties as Appellant, Respondent B., and Respondent M. (or Respondents when referencing them jointly), and the minor child and other witnesses by initials.

failing to consolidate the guardianship into the adoption proceeding, resulting in prejudice to Appellant.  We reverse the order accordingly.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. *Initial Guardianship Petition*

C.E., age three at the time of the relevant hearing, is the biological child of D.W. (Mother) and J.E. (Father).  While Mother was alive, her family and friends were actively involved in C.E.'s life.  Appellant is Mother's sister.  Appellant cared for C.E. on Mondays and every other weekend.  C.E. also spent significant time with Mother's mother, L.F. (Grandmother), and Mother's sister, T.W.  Respondent B. was Mother's close friend, and was considered by Mother's family to be like a sister to Mother although they were not biologically related.  Respondent B. spent a great deal of time with C.E. before Mother's death.  The family was also close with C.E.'s half-brother, Mother's older son from a prior relationship.

Mother passed away as a result of a drowning accident in August 2015 that was witnessed by Appellant and other family members.  After Mother's death, C.E. initially lived with Father; he also spent time with Respondents.  Appellant, Respondent B., and the rest of Mother's family continued to be involved in C.E.'s life on a day-to-day basis.

Over time, Appellant, Respondent B., and the family became concerned about Father's ability to parent C.E.  Father was the subject of a domestic violence restraining order involving his children from a prior relationship.  The parties, with the support of the rest of Mother's family and other close friends, determined Respondents should petition to be C.E.'s guardians, thus removing him from Father's care.  Respondents filed their guardianship petition in April 2016.  Appellant, T.W., Grandmother, and a family friend submitted statements to the court in support of Respondents' petition.  Father opposed the petition.

In May 2016, the trial court granted temporary guardianship of C.E. to Respondents and subsequently conducted a hearing on Respondents' petition.  Although

2

Father initially appeared to challenge the petition, he left the courthouse after the court denied his request for a continuance. The court granted Respondents' petition and appointed them guardians of C.E.'s person and estate on June 17, 2016.

### B. *Appellant's Petition to Remove/Replace Respondents as Guardian*

Not long after they were appointed C.E.'s guardians, Respondents' relationship with Appellant and the rest of Mother's family deteriorated. Although the court's orders indicated Respondents had legal and physical custody of C.E., Appellant and her family believed they had an informal agreement with Respondents that would allow them to jointly parent C.E., share in decisionmaking, and visit him regularly. Respondents limited C.E.'s visitation with Appellant and the family, and restricted the family's involvement in decisions regarding C.E.

In December 2016, six months after the court granted the guardianship petition, Appellant filed a petition to remove Respondents as C.E.'s guardians and contemporaneously filed a petition to be appointed as C.E.'s replacement guardian. In her petitions, Appellant alleged there had been a change in circumstances that warranted changing guardianship in C.E.'s best interests. Appellant claimed Respondents restricted the family's visits with C.E. and threatened to move out of state with him, thus preventing him from bonding with the family, despite the agreements they made when the family supported Respondents' petition. Father supported Appellant's petition to replace Respondents as C.E.'s guardians, as did Appellant's other family members. Respondents opposed Appellant's petitions. They argued it was not in C.E.'s best interests to change guardianship to Appellant. They asserted that while they initially tried to balance the family's demands with C.E.'s needs, they found C.E. evidenced negative physical and emotional effects from the visitation schedule and other family demands. Respondents felt they needed to set boundaries with the family, which made the family angry.

3

The trial court assigned Appellant's petitions to the judicial officer who had heard Respondents' guardianship petition. The court's probate investigator provided a report to the court on January 28, 2017, after visiting Respondents and C.E. in their home. She also visited Appellant, but did not observe Appellant with C.E.; given that Appellant sought to remove Respondents as C.E.'s guardians, the investigation's focus was on C.E.'s well-being at Respondents' house. The investigator recommended that the court appoint minor's counsel for C.E.; she did not recommend removing Respondents as C.E.'s guardian at that time. She could not say it was in C.E.'s best interests to remove him from Respondents, despite believing the family made "salient points," and recognizing the family might have made a different decision about who should be C.E.'s guardian had they not been suffering "grief and fear after the death of [C.E.]'s mother." The investigator recommended "the assessment and opinion of a child custody expert (child psychologist), and a conclusive bonding study, to determine the level of detriment (or not) that might be caused for [C.E.] if he were to be removed from the current guardians."

The trial court appointed counsel for C.E. The parties, including minor's counsel, all agreed to the appointment of an expert to undertake a bonding assessment; they stipulated to the appointment on the record at a hearing in March 2017. The court declined to appoint the expert despite the stipulation. In doing so, the trial court stated, "First of all, the petition for removal of the guardians does not meet any of the standard statutory basis [sic] for removal of a guardian. None is even pled. [¶] While any skilled lawyer could probably, in an amended petition, cure that deficiency, the facts don't look too promising as alleged in all the materials I read, Mr. Kontz, for your side of the case. If you want to hire an expert, hire an expert. I will not be involved in that process. I think it's a waste of time and a waste of money."

Respondents filed a motion for judgment on the pleadings in April 2017, alleging Appellant's petitions to remove them as C.E.'s guardians and have herself appointed in

4

their place did not state sufficient facts to constitute a cause of action to dismiss and/or replace Respondents. After briefing and argument, the court granted the motion as to each of Appellant's petitions with leave to amend. In July 2017, Appellant filed a first amended petition to remove Respondents as guardians. Consistent with Probate Code section 2650, she alleged Respondents were not able to perform the fundamental responsibilities of guardians and should be removed in C.E.'s best interests for the following reasons: they failed to provide medical and dental care or a "safe environment for physical and emotional growth"; Respondent B. suffered from a medical condition that clouded her judgment and damaged C.E.'s "emotional and psychological life"; Respondents restricted C.E.'s bond with Mother's family; Respondents stated an intent to move away from that family; and, Appellant had petitioned to adopt C.E., such that the guardianship should be consolidated into the adoption proceeding. Respondents immediately objected to Appellant's amended petition.

### C. Appellant's Adoption Petition and Requests to Consolidate Proceedings

In April 2017, before Respondents filed the motion for judgment on the pleadings, and before Appellant filed her first amended petition to remove Respondents as guardians, Appellant filed a separate petition to adopt C.E. She subsequently sought to consolidate the guardianship and adoption cases through motions filed in each case, as described below.

The trial court assigned the adoption case to the same judge who was to hear the guardianship case. In May 2017, after filing the adoption petition, Appellant filed an ex parte request in the adoption case asking the court to consolidate the guardianship case into the adoption case. In an order filed May 15, 2017, the court denied the request, stating the issue was moot because the adoption and guardianship matters were assigned to the same judicial officer for hearing. The order also indicated the adoption matter would trail the guardianship proceeding.

5

Within a week of the adoption case being assigned to the judge hearing the guardianship matter, Appellant submitted a timely peremptory challenge under Code of Civil Procedure section 170.6 to the guardianship judge hearing the adoption case. At a hearing in June 2017, the court confirmed that the judge hearing the guardianship matter was disqualified in the adoption proceeding. Thereafter, the court assigned a new judge to the adoption case, who issued an order in June 2017 staying the adoption proceeding pending the court's final ruling on the guardianship petition.

In July 2017, Appellant filed in the adoption proceeding an ex parte "re-application" for an order consolidating the guardianship proceeding into the adoption proceeding, arguing the issue was no longer moot as the two cases were now assigned to different judges. The court denied the request based on the order staying the adoption proceeding. On August 3, 2017, Appellant filed a Request for Order in the adoption proceeding to consolidate the guardianship case into the adoption; the motion was set for a hearing in September 2017 in the department of the judge assigned to the adoption case.

On August 9, 2017, the parties appeared before the judge assigned to the guardianship proceeding for a hearing in that matter. Appellant's counsel notified the court that Appellant had filed a motion to consolidate in the adoption proceeding. The court then set a hearing for August 28, 2017, on a motion to consolidate the adoption proceeding with the guardianship case, to be heard in his department. On August 15, 2017, Appellant filed pleadings in support of the motion the guardianship judge set for hearing; this was the first consolidation motion she filed in the guardianship action.

On August 28, 2017, yet a third judge heard the motion to consolidate the guardianship and adoption cases. The minute order confirms the hearing was in the guardianship case, not the adoption case.[3] The court issued a tentative ruling denying

_____

[3] It is unclear why the court assigned the motion to consolidate to a new judge. The judge confirmed at the hearing that he did not know why he was assigned to hear the motion.

consolidation on the grounds the judge assigned to the adoption case had already denied the request to consolidate based on the stay of the adoption proceedings and no one sought reconsideration of that order. Appellant's attorney asked the court to treat the pending motion as one for reconsideration, based on his own error in failing to file the proper motion. The attorney noted, and the court confirmed, the adoption judge had stayed the adoption proceeding without notice to the parties or opportunity to be heard. The court ultimately determined the pending motion was not one for reconsideration. The court declined to revisit the prior order and denied the motion to consolidate.

### D. *Evidentiary Hearing in Guardianship Proceeding*

The judge assigned to the guardianship proceeding held a contested evidentiary hearing on Appellant's first amended petition to remove Respondents as guardians on November 9 and November 13, 2017.[4] At the outset, Appellant's attorney objected to the judge hearing the matter, arguing the guardianship petition should have been consolidated into the adoption proceeding. The court noted the objection and proceeded with the hearing.

Appellant testified in support of her petition, as did Grandmother, sister T.W., a family friend, and C.E.'s half-brother. Aside from C.E.'s half-brother, who was a junior in high school and a minor, each of these witnesses had provided a statement in support of Respondents becoming C.E.'s guardians. Unprompted by an objection from Respondents, the court determined that the witnesses could only testify as to events that took place after the court appointed Respondents as C.E.'s guardians, as the witnesses did

---

[4] In her amended petition to remove Respondents as guardians, Appellant references a concurrently filed amended petition to be appointed as the successor guardian; however she did not file such a petition. In her October 2017 trial brief, Appellant did ask the trial court to both remove Respondents and appoint her as C.E.'s new guardian. Her attorney reiterated that request during the November 2017 trial, with no objection from Respondents on the grounds Appellant did not file an appropriate pleading. Minor's counsel also indicated she believed the issue of appointing a successor guardian was before the court if it granted Appellant's motion to remove Respondents.

not raise any concerns about Respondents to the court prior to Respondents' appointment in the original guardianship proceedings. Appellant's attorney objected to this ruling; minor's counsel suggested some information about the past would be necessary for a full understanding of the current situation. The court ruled that the witnesses' previous statements constituted judicial admissions, such that they served as "conclusive concessions of the truth of those matters," thus precluding those witnesses from now contradicting those statements. Before each witness testified, the court either read into the record a portion of the statement the witness previously provided in support of Respondents' guardianship, or stated on the record that he reviewed the witness's statement.

Similarly, without an objection from Respondents' counsel, during Grandmother's testimony, the court determined evidence concerning issues with the family's visitation with C.E. after the start of the guardianship was not relevant to the issue of removing Respondents as guardians. When Appellant's attorney argued the information about visitation was relevant to C.E.'s best interests, the court opined that Respondents should have made a motion to strike those allegations from the petition. He stated, "[m]inor disagreements with visitation are not a basis for removal of guardians. You have listed far more serious allegations for removal. Let's get to them, because if all you have is visitation, you're not going to make it."

Appellant, Respondent B., and the other witnesses testified to events they alleged took place after Respondents became C.E.'s guardians. Appellant, Grandmother, and T.W. each alleged Respondent B. unreasonably restricted the family's visitation with C.E., and that Respondent B. lied about why C.E. would not be spending time with them as anticipated. They also expressed concern about how Respondents addressed C.E.'s health care, indicating that Respondents allowed C.E. to develop untreated dental decay and did not properly address his asthma with an appropriate medical plan. The witnesses also testified that Respondent B.'s health impaired her ability to care for C.E. and raised

8

concerns that Respondent B. posed a danger to him. Appellant called C.E's half-brother who testified he was not able to see C.E. as frequently as he wanted because he did not feel comfortable at Respondents' house. Appellant and Grandmother confirmed that maintaining C.E.'s relationship with his half-brother was important to both boys.

Respondents each testified, confirming their commitment to care for C.E. and meet his needs. While the court limited the admissibility of information about Respondent B.'s medical condition, she testified that her health did not impair her ability to care for C.E.; Respondent M. confirmed he had never seen Respondent B. pose a danger to C.E. Respondent B. denied allegations that she manipulated the family in order to obtain guardianship of C.E., and that she lied about C.E.'s health in order to keep him from visiting with the family. Respondent B. provided information about C.E.'s medical and dental health, affirming that Respondents obtained appropriate medical and dental treatment for C.E. While Respondent B. intended that the family be involved in C.E.'s life, she denied any agreement that Respondents would essentially co-parent C.E. with the family; she believed there needed to be one set of parents making decisions. Respondent B. stated she did not believe she had violated any agreement with the family. Respondents did not say they wanted to resign as C.E.'s guardians; rather the family was making things difficult for Respondents. The conflict started when Respondents restricted C.E.'s time with the family, something they did because C.E. was exhibiting "concerning" behaviors, such as being aggressive, having tantrums, and crying.

Probate court investigator Blythe Stanford testified that she was assigned to investigate Appellant's petitions to remove Respondents as current guardians and to be appointed successor guardian. Ms. Stanford had been employed for five years by the court and had conducted over 60 guardianship investigations for the court. She visited C.E. in Respondents' home, but did not observe C.E. with Appellant as C.E. did not live with her. She indicated Respondents' home was clean, well maintained, and that C.E. had a very nice bedroom, a comfortable bed, quality toys and clothes. C.E. was

9

comfortable in the home and it seemed very suitable. There were many pictures of family and friends, including Mother, in the home. C.E. was relaxed and physically comfortable with Respondents and seemed connected to them. He called them "Tio," "Tia," "Mom" and "Daddy" interchangeably. He seemed like a "happy, well adjusted child." She had no concern that Respondents could not care for the child. They had no criminal history. Ms. Stanford recommended that the guardianship remain in place.

The court denied Appellant's petition to remove Respondents as C.E.'s guardians on the record on November 13, 2017. Appellant timely filed notice of her appeal on January 12, 2018, identifying the "order refus[ing] to revoke guardianship" as the order being appealed.[5] (Code Civ. Proc., § 904.1, subd. (a)(10); Prob. Code, § 1301(a).)

## II. DISCUSSION

### *The Trial Court Erred by Not Consolidating the Guardianship into the Adoption*

Appellant argues that once she petitioned to adopt C.E., the trial court was required by law to consolidate her December 2016 petitions to remove and replace Respondents as C.E.'s guardians into the adoption proceeding. She asserts that the court therefore erred in denying her May 2017 request filed in the adoption case to consolidate the guardianship and adoption proceedings.

Respondents argue the order at issue is not the May 2017 order denying the request to consolidate filed in the adoption proceeding, but rather the final order issued in August 2017 denying Appellant's motion to consolidate filed in the guardianship proceeding. They believe the court correctly denied this request for consolidation; they assert there was no guardianship petition pending at the time Appellant filed the adoption petition, as the court had already granted a permanent guardianship in Respondents' favor in June 2016. Respondents further argue that if we conclude a viable guardianship

---

[5] Appellant noticed her appeal before the trial court issued a written order. The court issued the written order denying the petition on February 5, 2018, after which we deemed the appeal filed as of February 5, 2018 on our own motion.

proceeding was pending at the time Appellant filed her motion for consolidation of the two actions, the court stayed the adoption proceeding in June 2017 pending the result of the guardianship proceeding, such that the trial court was not required to consolidate the two matters. Finally, Respondents argue the court lacked jurisdiction in August 2017 to enter a different order than those already entered in May and July 2017 denying consolidation. We address each argument in turn.

### 1. *The August 2017 Order Denying Consolidation Filed in the Guardianship Proceeding is the Operative Order on Appeal*

Because Appellant appealed from the denial of her first amended petition to remove Respondents as guardians, the orders at issue in the instant appeal are those made in the guardianship proceeding. While the trial court issued orders in the adoption proceeding in May and July 2017 denying Appellant's requests to consolidate the guardianship and adoption cases, those orders are not part of the appeal before us as they are not included in Appellant's notice of appeal. We have no jurisdiction over them. (*Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 504; *Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069, 1073.) Appellant first raised her request for consolidation in the guardianship proceeding on August 15, 2017, which the court heard on August 28, 2017. For purposes of this appeal, we consider the propriety of the order issued in the guardianship proceeding following the August 28, 2017 hearing, denying Appellant's motion to consolidate the guardianship proceeding into the adoption case.

### 2. *Guardianship vs. Adoption Proceedings*

Because our review of the August 2017 order concerns the procedural interrelationship of guardianship and adoption cases, we review each process and its purpose.

Guardianships under the Probate Code "originated in the law governing the administration of decedents' estates, but it has not been restricted to orphans. Long

11

before the advent of the dependency statutes, probate guardianships were instituted when 'conditions [were] shown to be such, by reason of the mental and moral limitations or delinquency of parents, that to allow the child to continue in their custody would be to endanger [the child's] permanent welfare.' [Citation.] [Fn. omitted.] In such cases, courts recognized that the 'right of the parent [to custody] must give way, its preservation being of less importance than the health, safety, morals, and general welfare of the child.' [Citation.]" (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1121-1122.)

The trial court can appoint a guardian for a child when it "appears necessary or convenient," governed by Family Code sections 3020 et seq., and 3040 et seq., related to custody of a minor. (Prob. Code, § 1514, subd. (a), (b).) By virtue of these references to the Family Code, the trial court must consider the best interests of the proposed ward when making its orders, with the child's health, safety, and welfare being the court's primary concern in doing so. (Fam. Code, § 3020, subd. (a).) While Family Code section 3040 sets forth an order of preference in awarding custody of a child, the Legislature makes it clear its goal is to allow the court the "widest discretion to choose a parenting plan that is in the best interest of the child." (Fam. Code, § 3040, subd. (c).)

A person seeking appointment as guardian files a petition with the court, pursuant to Probate Code section 1510, upon which the court sets a hearing. (See Prob. Code, § 1511.) Unless waived by the court, a court investigator investigates each proposed guardian, thereafter filing a report with the court, which the court must read and consider prior to ruling on the petition. (Prob. Code, § 1513.) On proper showing, the court appoints the guardian by issuing an order appointing the guardian, as well as letters of guardianship. (Prob. Code, §§ 2310, 2311.) "The parent's rights over the child are suspended for the duration of the probate guardianship. (Fam. Code, § 7505, subd. (a); [citation].) However, the court retains discretion to grant visitation, and may terminate the guardianship on a petition by the guardian, a parent, or the child, based on the child's best interest. ([Citation]; [Prob. Code] § 1601.)" (*Guardianship of H.C.* (2011) 198

12

Cal.App.4th 1235, 1245, as mod. on den. of rehg. (Sept. 1, 2011).) Thus, while the legal community often refers to the issuance of letters of guardianship as the order of "permanent" guardianship[6], no guardianship is truly permanent, and any can be revoked by court order on an appropriate showing. If not terminated by court order, the guardianship ends once the child attains majority, dies, is adopted, or becomes emancipated. (Prob. Code, § 1600.)

An adoption is permanent. (See *Estate of Cleveland* (1993) 17 Cal.App.4th 1700, 1707.) Following an adoption, the adopted child and adoptive parents have a legal parent and child relationship under the law, with all rights and duties attendant thereto. (Fam. Code, § 8616.) Unless the parties to the adoption waive the termination of parental rights, the existing parents of the adopted child are "relieved of all parental duties towards, and all responsibility for, the adopted child, and have no right over the child." (Fam. Code, § 8617.)

"The main purpose of adoption statutes is the promotion of the welfare of children, bereft of the benefits of the home and care of their real parents, by the legal recognition and regulation of the consummation of the closest conceivable counterpart of the relationship of parent and child. While a guardian of the person of a minor is charged with a high duty and serious responsibility in the care of his ward, nevertheless the status of guardian and ward falls short of the close approximation to the relationship of parent and child which is attainable through actual adoption culminating, as it does, in the child

---

[6] Although the statutes do not refer to the issuance of letters of guardianship as the order of "permanent" guardianship, they do set forth a procedure for appointing a temporary guardian. During the pendency of the guardianship proceeding, the court can appoint a temporary guardian upon a showing of "good cause." (Prob. Code, § 2250, subd. (b).) A temporary guardian has only those powers and duties "that are necessary to provide for the temporary care, maintenance, and support of the ward . . . ." (Prob. Code, § 2252, subd. (a).) The temporary guardian's powers terminate at the earliest of the appointment of a guardian, or 30 days after the appointment of the temporary guardian, but the court can extend or shorten the powers of the temporary guardian for good cause. (Prob. Code, § 2257.)

13

becoming a member, to all intents and purposes, of the family of the foster parents." (*In re Santos* (1921) 185 Cal. 127, 130.) A decree of adoption gives adoptive parents superior rights to custody of the adopted child, making any contemporaneous guardianship of that child unnecessary. (*Id.* at p. 132; see *San Diego County Dept. of Pub. Welfare v. Superior Court* (1972) 7 Cal.3d 1, 9.)

In California, there exist two primary kinds of adoption: agency adoption, in which the parents relinquish the child to the State Department of Social Services (the department) or a licensed adoption agency (Fam. Code, §§ 8506, 8518), and independent adoption, in which the parents select the prospective adoptive parents and place the child directly with those selected parents. (Fam. Code, §§ 8524, 8539.) In the instant matter, Appellant filed her adoption petition as an independent adoption. A petition for an independent adoption can be filed by a child's specified family member, including an aunt such as Appellant, or by someone who has been the child's legal guardian for more than one year, amongst other potential petitioners. (Fam. Code, § 8802, subd. (a).)

Following the filing of the petition, the department or a delegated county adoption agency must investigate the proposed independent adoption and submit a report and recommendation to the court; the department must also interview the petitioner and the parents placing the child for adoption. (Fam. Code, §§ 8807, 8808.) If the department recommends against the adoption, the court must hold an evidentiary hearing on the petition; "It seems clear . . . that the Family Code contemplates a trial-like hearing, in which the decision is based on the testimony of live witnesses. . . ." (*Adoption of Baby Girl B.* (1999) 74 Cal.App.4th 43, 51-52; Fam. Code, § 8822, subd. (a).) "If satisfied that the interest of the child will be promoted by the adoption, the court may make and enter an order of adoption of the children by the prospective adoptive parent or parents." (Fam. Code, § 8612, subd. (c).) "While the child's 'best interest' is 'an elusive guideline that belies rigid definition,' obviously overall '[i]ts purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult.' (*Adoption of Michelle T.*

14

(1975) 44 Cal.App.3d 699, 704, . . .)" (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 437 (*Sharon S.*).)

### 3. *The Relevant Statutes Mandate Consolidation of the Proceedings*

The statutes governing guardianships and adoptions contain numerous provisions requiring trial courts to consolidate guardianship and adoption proceedings. In support of her many requests to consolidate the proceedings made to the trial court, Appellant cites Probate Code section 1510, subdivision (i), and Family Code section 8802, subdivision (d). Probate Code section 1510, relevant to a petition to be appointed as guardian, provides, "If the proposed ward is or becomes the subject of an adoption petition, the court shall order the guardianship petition consolidated with the adoption petition, and the consolidated case shall be heard and decided in the court in which the adoption is pending." (Prob. Code, § 1510, subd. (i).) Family Code section 8802, which governs Appellant's request to adopt C.E., similarly provides, "If the child is the subject of a guardianship petition, the adoption petition shall so state and shall include the caption and docket number or have attached a copy of the letters of the guardianship or temporary guardianship. The petitioners shall notify the court of any petition for guardianship or temporary guardianship filed after the adoption petition. The guardianship proceeding shall be consolidated with the adoption proceeding, and the consolidated case shall be heard and decided in the court in which the adoption is pending." (Fam. Code, § 8802, subd. (d).)[7]

---

[7] In addition to Probate Code section 1510, and Family Code section 8802, in her brief on appeal Appellant cites Family Code sections 8714 and 8714.5, neither of which apply here. Appellant filed her petition seeking an "independent adoption," which is governed by Family Code section 8800 et seq. Section 8714 and 8714.5 fall in the portion of the Family Code governing adoption of children who have been relinquished to the department, a county adoption agency, or a licensed adoption agency for adoption. (See Fam. Code, § 8700.) However, they serve as additional examples of the legislative mandate prescribing consolidation of a pending guardianship proceeding with any pending adoption proceeding. (Fam. Code, §§ 8714, subd. (e) ["The guardianship proceeding shall be consolidated with the adoption proceeding."]; 8714.5, subd. (f) ["The

15

We review the interpretation of the relevant statutes de novo. (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 189; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) In interpreting the statutes, "We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Hassell v. Bird* (2018) 5 Cal.5th 522, 540, internal citations omitted.)

Both Probate Code section 1510, subdivision (i), and Family Code section 8802, subdivision (d) plainly state the court "shall" consolidate the guardianship and adoption proceedings, and the consolidated matter "shall" be heard by the court hearing the adoption. Under general rules of statutory interpretation, "shall" denotes something is mandatory. (*Estate of Miramontes-Najera* (2004) 118 Cal.App.4th 750, 758-759.) Further, both the Family Code and the Probate Code explicitly define "shall" as "mandatory." (Fam. Code, § 12; Prob. Code, § 12.) Given this, we find Probate Code section 1510, subdivision (i), and Family Code section 8802, subdivision (d) to be clear and unambiguous. The trial court was required to consolidate the guardianship case with the adoption proceeding involving C.E. The consolidated case was to be heard and decided by the judge hearing the adoption case. The trial court had no discretion to deny Appellant's consolidation requests.

Respondents argue that even if the consolidation provisions of Probate Code section 1510, subdivision (i) and Family Code 8802, subdivision (d) are mandatory, Appellant's request for consolidation fails because of its procedural posture. Citing

guardianship proceeding shall be consolidated with the adoption proceeding, and the consolidated case shall be heard and decided in the court in which the adoption is pending."].)

16

Probate Code section 1510, which mandates consolidation of the cases if, when a guardianship petition is pending, an adoption petition is also filed, Respondents assert there was not a guardianship proceeding pending when Appellant sought to consolidate the guardianship action into the adoption proceeding. Respondents appear to reason that as their guardianship petition had been resolved in June 2016 with the issuance of letters of guardianship to them, by April 2017 when Appellant commenced the adoption proceedings C.E. could no longer be deemed a "proposed ward" under the statute ["If the proposed ward is or becomes the subject of an adoption petition, the court shall order the guardianship petition consolidated with the adoption petition, and the consolidated case shall be heard and decided in the court in which the adoption is pending." (Prob. Code, § 1510, subd. (i).)]. Respondents further assert that because the pending petition requested removal of Respondents as guardians under Probate Code section 1601, a statute that does not explicitly include a provision addressing contemporaneous adoption proceedings, there was no pending guardianship petition to consolidate into Appellant's adoption petition.

We are not persuaded. Even if we assume Probate Code section 1510, subdivision (i) did not apply in this case because C.E. was a ward subject to guardianship as opposed to a "proposed ward" under the statute, Respondents ignore the consolidation requirements imposed by the adoption statutes. Family Code section 8802 clearly applied here, as it requires the adoption petitioner, "[i]f the child is the subject of a guardianship petition . . .," to include the "caption and docket number *or have attached a copy of the letters of the guardianship or temporary guardianship . . .*" to the adoption petition. (Fam. Code, § 8802, subd. (d), italics added.) As noted previously, letters of guardianship are issued by the court when it grants the guardianship petition, i.e., when the guardianship becomes, in common parlance, "permanent." (Prob. Code, §§ 2310, 2311.) C.E. was the subject of a guardianship petition that resulted in the issuance of letters of guardianship to Respondents on June 17, 2016, placing that guardianship

17

petition within the scope of Family Code section 8802 and requiring its consolidation with the adoption proceeding under the plain meaning of that statute.

Further, the guardianship proceeding was still ongoing because after issuing the letters of guardianship the trial court continued to have jurisdiction to make visitation orders and hear requests to remove the guardians. (Prob. Code, § 1601.) In fact, courts have assumed the consolidation provisions applicable, regardless of how long the guardianship has been in place and regardless of its purported "permanency." In *Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1525-1526, as modified (Jan. 6, 2012), the subject child's grandparents filed an adoption petition long after they had been granted permanent guardianship of the child. Nearly four years after issuing the letters of guardianship, the trial court "consolidated the guardianship proceeding into the adoption proceeding pursuant to section 8802 of the Family Code." (*Id.* at p. 1526.) Thus, even if Appellant had never filed a petition to remove or replace Respondents as guardians, once she filed the petition to adopt C.E., Family Code section 8802 required consolidation of his guardianship case into the adoption case, regardless of whether there had been recent litigation in the guardianship proceeding. We therefore find the absence of language requiring consolidation in Probate Code section 1601 governing the removal and replacement of guardians insignificant when we consider the statutory scheme as a whole.

Respondents also ask us to find there was not an adoption proceeding pending at the time the trial court denied Appellant's final request for consolidation, as the trial court had ordered the adoption proceeding stayed. Respondents do not cite any legal authority in support of this position. Similarly, Respondents argue the court, in August 2017, "lacked jurisdiction" to grant the consolidation request. As with their argument regarding the stay, they do not cite any legal authority for this proposition. "We need not address this claim for which no supporting legal authority is provided." (*City of Monterey v.*

18

*Carrnshimba* (2013) 215 Cal.App.4th 1068, 1094, fn. 23, citing *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384.)

Ultimately Respondents' claims fail because the Legislature has stated in *four separate statutes* that once an adoption petition has been filed and is pending, the guardianship petition is to be consolidated with the adoption case, ". . . and the consolidated case shall be heard and decided in the court in which the adoption is pending." (Fam. Code, §§ 8714.5, subd. (f), 8802, subd. (d); Prob. Code, § 1510, subd. (i); see also Fam. Code, § 8714 [mandates consolidation of guardianship and adoption without specifying in which proceeding the matters should be heard].) The Legislature's choice to specifically mandate that this procedure be followed, and its inclusion of identical language in every guardianship and adoption statute, signals that the choice of language was no idle act. (See *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 390, citing *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 22 [" 'We do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous.' "].)

Moreover, the plain language of the statutes does not allow for a stay of the adoption case or the guardianship case when consolidation is requested by a party. Consolidation, as a procedural matter, converts two cases into one action. (See Code Civ. Proc., § 1048, subd. (a); *Hamilton v. Asbestos Corp., Ltd.* (2000) 22 Cal.4th 1127, 1147 ["a complete consolidation or consolidation for all purposes, [is] where the two actions are merged into a single proceeding under one case number and result in only one verdict or set of findings and one judgment."].) Both Family Code section 8802, subdivision (d) and Probate Code section 1510, subdivision (i) instruct the court to consolidate separate guardianship and adoption matters; that one consolidated case is then to be heard and decided in the court in which the adoption is pending. This legislative scheme, requiring consolidation of the guardianship and adoption petitions, facilitates the court's

19

determination of the child's best interests when deciding long term placement. (Prob. Code, § 1514, subd. (a), (b); Fam. Code, §§ 3020, 3040, 8612, subd. (c).)

At the time the court ruled on Appellant's consolidation motion filed in the guardianship proceeding, a guardianship proceeding and an adoption petition were pending. We conclude the plain language of the relevant statutes mandated consolidation of the guardianship proceeding into the adoption proceeding. The trial court erred in failing to follow the statutory mandate in its August 2017 order denying consolidation.

### 4. *The Trial Court Committed Prejudicial Error*

Having found error, we next consider whether that error requires reversal of the trial court's order. Generally, an appellant must show that the error was prejudicial to compel reversal. (*Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 799.) Unless the error is reversible per se, we apply the prejudicial error rule even if the trial court failed to follow a statutory mandate.[8] (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 58-60.) "To establish prejudice, a party must show 'a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached.' [Citation.]" (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1161 (*Diaz*).) In the context of prejudicial error, "probability" does not mean "more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*. [Citations.]" (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715, as modified (Nov. 23, 1994).)

---

[8] Appellant does argue the court committed per se error based on the alleged prejudice and/or bias of the judge assigned to the guardianship proceeding, believing he should have been disqualified from hearing the guardianship matters. Appellant did not raise these arguments in the trial court; she cannot do so for the first time on appeal. (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.) Additionally, we do not reach the issue of whether the court's failure to follow the statutory mandate to consolidate in and of itself constitutes per se error as there is evidence that Appellant was prejudiced by the court's order.

Respondents argue Appellant has not met this burden, as the ultimate ruling in the guardianship proceeding denying her request to remove Respondents as guardians does not prejudice her rights in the adoption proceeding. We do not agree. We conclude the court's August 2017 ruling ultimately served both to prejudice Appellant and to deny C.E. the benefit of the court's full consideration of his best interests.

By failing to consolidate the guardianship proceedings into the adoption proceeding, the court too narrowly focused the scope of its inquiry at the November 2017 hearing. Consolidation of the guardianship and adoption proceedings would have required the trial court to undertake a full inquiry into all of the then-available long-term placement options to serve C.E.'s best interests and to consider them contemporaneously, including both retention of the guardianship or granting of the adoption. The court would have had the benefit of a thorough investigation of Respondents and Appellant through the mandated guardianship and adoption investigative processes. (Prob. Code, § 1513; Fam. Code, §§ 8807, 8808.) Although the best interest standard has been called " 'an elusive guideline that belies rigid definition,' " (*Sharon S.*, *supra*, 31 Cal.4th at p. 437) there is no question the court's analysis requires a broad inquiry. (See Fam. Code, § 3040, subd. (c) ["This section . . . allows the court and the family the widest discretion to choose a parenting plan that is in the best interest of the child."]; see also *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31-32 ["[The court] must look to *all the circumstances* bearing on the best interest of the minor child." (Original italics.)].)

Here, however, the court considered only whether to maintain Respondents as guardians, focusing both the investigation and the contested proceedings very narrowly on that issue. The proceedings were thus skewed in favor of maintaining the guardianship from the outset. The court's probate investigator looked only at the circumstances of C.E.'s then-current living circumstances, because her only focus was on the petition to remove Respondents as guardians. She did not see C.E. interact with Appellant. The court would not entertain expert testimony relevant to determine whether

21

C.E. would suffer a detriment if removed from Respondents or denied contact with Appellant. Nor would the court consider evidence related to Appellant's visitation with C.E. By endorsing the limited contact between aunt and child without thoughtful consideration of its effect on long-term placement with Appellant, the court also impacted Appellant's efforts to adopt C.E. Implicit in the court's order denying removal of Respondents as C.E.'s guardians was a finding that C.E. should remain with Respondents. The trial court's language and conduct during the hearing made clear he viewed Respondents' home as C.E.'s permanent placement ["I will say one other thing. C.E. needs a man and a woman whom he can call mom and dad. He will be a very sad child if he's not allowed that privilege."]. But guardianship was not the only long-term placement option for C.E. available to the court and it should not have been considered in isolation.

Appellant's petition to adopt C.E. was not a frivolous action. At the time Appellant filed for adoption, she had standing to do so under Family Code section 8802, subdivision (a)(1)(A), as she is C.E.'s blood relative.[9] She also had the support of Father in pursuing the adoption, required under Family Code section 8801 ["The selection of a prospective adoptive parent or parents shall be personally made by the child's birth parent or parents and may not be delegated to an agent. The act of selection by the birth parent or parents shall be based upon his, her, or their personal knowledge of the prospective adoptive parent or parents." (Fam. Code, § 8801, subd. (a).)]. In April 2017, when Appellant filed the adoption petition, Respondents did not have standing to seek adoption of C.E. Under Family Code section 8802, subdivision (a)(1)(D)(i), Respondents would have standing to petition to adopt C.E. once they had been his legal guardians for

---

[9] Appellant argues the delay in the adoption nullified her statutory preference as a blood relative under Family Code section 8714.5. As discussed in footnote 4, *ante*, section 8714.5 does not apply in the instant proceeding, as Appellant does not seek an agency-involved adoption.

at least a year. Respondents had been C.E.'s permanent guardian 10 months at the time Appellant filed her adoption petition, and 11 months when Appellant first sought consolidation. Nor did they have the support of Father, a necessary component of an independent adoption.

There was no obvious fact precluding Appellant's candidacy as an adoptive parent. While the probate investigator in the guardianship proceeding did not recommend removing Respondents as guardians, that same investigator recommended "the assessment and opinion of a child custody expert (child psychologist), and a conclusive bonding study, to determine the level of detriment (or not) that might be caused for [C.E.] if he were to be removed from the current guardians." She also noted that the family made "salient points" related to the removal, recognizing that they were in the midst of "grief and fear after the death of [C.E.]'s mother." Her comments reflected the tragedy of Mother's death and its impact on all family members, including Appellant, C.E. and Respondents. A thorough investigation through the adoption process could have fleshed out these nuances consistent with C.E.'s interests.

While the goal of the Probate and Family Codes is to find a stable placement for C.E. at the earliest possible time (see Prob. Code, § 1610), there is a general preference in the law for adoption over guardianship if it is in the child's best interests. (See *Guardianship of Henwood* (1958) 49 Cal.2d 639, 645 [where children are relinquished to adoption agency, ". . . adoption is ordinarily to be preferred to guardianship."].) This is most clear when the court is required to elect between legal guardianship and adoption in a dependency action pursuant to Welfare and Institutions Code section 366.26. While the Family and Probate Codes do not contain a similar statutory preference for adoption over guardianship, the rationale concerning the child's best interests remains relevant: " '. . . [C]hildren can be afforded the best possible opportunity to get on with the task of growing up by placing them in the most permanent and secure alternative that can be afforded them.' [Citation.] Guardianship, since it is not irrevocable, ' "falls short of the

23

secure and permanent placement intended by the Legislature." ' [Citation]" (*In re Jose V.* (1996) 50 Cal.App.4th 1792, 1798-1799.)

The viability of Appellant's potential adoption of C.E. demonstrates that she was prejudiced by the trial court's failure to consolidate the guardianship and adoption proceedings. There is a "reasonable probability" that had the court properly consolidated the matters and considered all available placement options in C.E.'s best interests, Appellant would have obtained a more favorable result. (*Diaz, supra,* 51 Cal.4th at p. 1161.) It is true that once the court lifts the stay on the adoption, the department can undertake the required investigation. It also may be the case that it is in C.E.'s best interests to maintain his status as Respondents' ward. It is not our role to make that determination. However, the law clearly requires that when the court has before it the placement options of both guardianship and adoption, the court must consider the options together in order to make a decision that reflects the best interests of the child.

Having found that the trial court erred in denying Appellant's motion to consolidate and that Appellant suffered prejudice as a result, we reverse the trial court's order denying Appellant's petition to remove Respondents as guardians and remand the matter to the trial court with instructions to consolidate the guardianship proceeding into the adoption proceeding. Upon consolidation, the matter shall be heard by the judge assigned to the adoption case.[10] We are mindful that Respondents have had custody of C.E. for over a year and a half and may have an advantage in any subsequent adoption proceedings. Although we sympathize with Appellant's predicament, this court is unable to turn back the clock. However, Appellant shall not be prejudiced by any findings or orders made in the guardianship proceeding. (See *In re Vanessa P.* (1995) 38 Cal.App.4th 1763, 1772.)

---

[10] Because we are reversing the order based on the failure to consolidate, we do not address Appellant's other arguments on appeal.

### III.    DISPOSITION

The order denying Appellant's petition to remove Respondents as C.E.'s guardians is reversed.  We remand the matter to the trial court.  The trial court shall consolidate the guardianship proceeding into the adoption proceeding.  Upon consolidation, the matter shall be heard by the judge assigned to the adoption case.  All prior orders made in the guardianship proceeding are to be vacated by the trial court, except that the court in the adoption case shall make any necessary, short-term emergency custody orders.

_____

Greenwood, P.J.


WE CONCUR:


_____

Grover, J.


_____

Danner, J.


Guardianship of C.E., a Minor.; S.H. v. M.M. et al.
No. H045427

| | |
|---|---|
| Trial Court: | Santa Cruz County Superior Court |
| | Superior Court No.: 16PR00175 |
| Trial Judge: | The Honorable John M. Gallagher |
| Attorneys for Minor, C.E.: | Julie E. Braden under appointment by the Court of Appeal for Minor |
| Attorneys for Petitioner and Appellant, S.H.: | O'Reilly Law Office Kathleen O'Reilly |
| Attorneys for Objectors and Respondents, M.M. et al. | Carter Law Firm Gregory Wade Carter |

Guardianship of C.E., a Minor.; S.H. v. M.M. et al.
No. H045427