Filed 12/5/25  P. v. Apostolovic CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALEKSANDAR APOSTOLOVIC,<br><br>    Defendant and Appellant. | G064175<br><br>(Super. Ct. No. 15ZF0002)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge. Affirmed.

Jo Pastore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher Beesley and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

In 2014, Aleksandar Apostolovic fled from the police, causing a high-speed chase through a residential neighborhood. After running a stop sign, he crashed his SUV into a minivan, killing one of the minivan's passengers. Apostolovic pled guilty to murder. He was sentenced to 23 years to life in prison, which included 15 years to life for the murder, five years for a prior serious felony enhancement (the nickel prior), and three years for prior prison term enhancements. Years later, Apostolovic filed a resentencing petition under Penal Code section 1172.75.[1] The court resentenced him to 20 years to life in prison. It struck the prior prison term enhancements, but it concluded that striking the nickel prior was not in the interests of justice.

On appeal, Apostolovic argues the trial court abused its discretion by failing to strike the nickel prior. We disagree. At the time of the murder, Apostolovic had been convicted of multiple felonies and had several recent traffic citations, including a citation for running a red light and one for weaving through traffic while speeding. Given this history and the egregiousness of the offense, the court could reasonably conclude that striking the nickel prior was not in the interests of justice. Thus, we affirm the judgment.

FACTS AND PROCEDURAL HISTORY

In 2014, police officers were attempting to locate Apostolovic, who had an outstanding warrant for a firearm violation. They observed him driving an SUV and initiated a stop. Apostolovic briefly stopped, then backed up his SUV, changed gears, and rammed his SUV into the police car before driving off. With the police in pursuit, he raced through a residential neighborhood and reached speeds of around 50 miles per hour, which was

---

[1] All undesignated statutory references are to the Penal Code.

well above the speed limit. He ran a red light and sped through several stop signs. He later admitted that he knew that "driving in such a matter [*sic*] [was] dangerous to human life."

After running a stop sign, Apostolovic's SUV collided with a minivan at an intersection. A 12-year-old passenger in the minivan died in the collision. Her 13-year-old brother also suffered injuries.

Meanwhile, though Apostolovic's SUV flipped over in the collision and landed on its roof, Apostolovic exited the SUV through a window and fled on foot. He was later apprehended by police after attempting to hide in a stranger's home.

In 2017, Apostolovic pleaded guilty to murder (§ 187, subd. (a)) and evading a peace officer resulting in serious bodily injury and death (Veh. Code, § 2800.3). He also admitted the truth of several enhancement allegations, including the nickel prior (§ 667, subd. (a)) and three prior prison terms (§ 667.5, subd. (b)).

The court sentenced Apostolovic to 23 years to life in prison, consisting of (1) 15 years to life for the murder count, (2) five years for the nickel prior, and (3) three years for the prior prison term enhancements. The court also imposed a 10-year concurrent sentence for evading a peace officer, which was stayed under section 654.

In 2023, Apostolovic filed a petition for recall and resentencing under section 1172.75. The court recalled his sentence. During resentencing, it struck the three prior prison term enhancements. As to the nickel prior, the court found a mitigating circumstance applied because the underlying felony conviction was over five years old. (§ 1385, subd. (c)(2)(H).) However, it ruled "that the interest of justice [was] not served by striking" the nickel prior. Thus, it imposed a new sentence of 20 years to life in prison, consisting of 15

years to life for the murder count and five years for the nickel prior. The court again imposed a 10-year concurrent sentence for the evading count, which was stayed under section 654.

On appeal, Apostolovic argues the trial court abused its discretion by failing to strike the nickel prior under section 1385, subdivision (c).

DISCUSSION

I.

APPLICABLE LAW

Section 1385, subdivision (c)(1), provides, "the court shall dismiss an enhancement if it is in the furtherance of justice to do so . . . ." Subdivision (c)(2) then explains that in exercising this discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)

Our Supreme Court recently explained that "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present. [Citation.] In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance,

4

such that dismissal of the enhancement is not in furtherance of justice.'"
(*People v. Walker* (2024) 16 Cal.5th 1024, 1029.)

We review the court's order declining to dismiss the nickel prior
for abuse of discretion. (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478,
490.) "[A] trial court does not abuse its discretion unless its decision is so
irrational or arbitrary that no reasonable person could agree with it." (*People
v. Carmony* (2004) 33 Cal.4th 367, 377.)

## II.

### ANALYSIS

Here, the trial court found that a single mitigating circumstance
was applicable: the nickel prior was based on a prior conviction over five
years old. (§ 1385, subd. (c)(2)(H).) After considering this mitigating
circumstance and reviewing "all of the factors that the Court [was] to look
at," the court concluded "that the interest of justice [was] not served by
striking" the nickel prior.

First, Apostolovic contends the court erred by failing to consider a
second mitigating circumstance: "The application of an enhancement could
result in a sentence of over 20 years. In this instance, the enhancement shall
be dismissed." (§ 1385, subd. (c)(2)(C).) Apostolovic argues "[t]he trial court
made an illogical finding that a sentence of 20-years to life was not a
sentence of over 20 years. That faulty analysis is one of the reasons [the
court] did not strike the enhancement."

We need not address this argument's merits. Even if the court
erred by failing to apply this second mitigating circumstance, Apostolovic has
not shown that such an error was prejudicial. (*Guardianship of C.E.* (2019)
31 Cal.App.5th 1038, 1054 [reversal generally requires prejudicial error].)
Section 1385, subdivision (c)(2) explains that "[p]roof of the presence of one or

5

more of these [mitigating] circumstances weighs greatly in favor of dismissing the enhancement . . . ." The trial court found one mitigating circumstance was present. Apostolovic has not explained how finding a second mitigating circumstance could have led to a more favorable result. (See *Guardianship of C.E.*, at p. 1054 ["'To establish prejudice, a party must show "a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached"'"].)

The closest Apostolovic gets to addressing prejudice is a conclusory statement that the court's "faulty analysis is one of the reasons [the court] did not strike the enhancement." But nothing in the court's reasoning suggests that it would have struck the nickel prior had it found a second mitigating circumstance. Nor has Apostolovic argued that dismissal of an enhancement is more favored when there are two mitigating circumstances instead of one. Simply put, Apostolovic has not shown how the presence of this purported second mitigating circumstance would have affected the court's decision.

Besides, we are unpersuaded by the merits of Apostolovic's argument. Significantly, the mitigating circumstance at issue only applies if "[t]he *application of an enhancement* could result in a sentence of *over* 20 years." (§ 1385, subd. (c)(2)(C), italics added.) Here, the nickel prior made the determinate portion of Apostolovic's sentence 20 years but not "*over* 20 years." (See § 1385, subd. (c)(2)(C), italics added.) The potential of a sentence of over 20 years did not arise from the application of the nickel prior. Rather, it arose from the indeterminate life term attached to Apostolovic's murder sentence. In other words, it was not the application of the nickel prior that could potentially result in Apostolovic serving a term of over 20 years.

Rather, his potential for serving such a sentence was due to the sentencing on the murder count. Thus, this mitigating circumstance does not apply.

Next, Apostolovic appears to argue that the court abused its discretion by failing to dismiss the nickel prior despite the presence of a mitigating circumstance. He also highlights other positive factors favoring the nickel prior's dismissal, including his completion of various programs and certifications in prison. We find no error.

The trial court could find that striking the nickel prior was "'not in furtherance of justice'" if there was "credible evidence of countervailing factors" that "'neutralize[d] . . . the great weight of the mitigating circumstance.'" (*People v. Walker*, *supra*, 16 Cal.5th at p. 1029.) "Case law suggests that in determining the 'furtherance of justice' the court should consider . . . the defendant's background and prospects, including the presence or absence of a record; the nature and circumstances of the crime and the defendant's level of involvement; the factors in aggravation and mitigation including the specific factors in mitigation of section 1385(c); and the factors that would motivate a 'reasonable judge' in the exercise of their discretion." (Advisory Com. com., Cal. Rules of Court, rule 4.428.)

Here, Apostolovic had a long history of criminal activity and dangerous driving. Prior to the murder, he had six felony convictions in Orange County. These included convictions for unlawful taking of a vehicle in 2005 and again in 2008, possession of a deadly weapon in 2007, receiving stolen property in 2008, and burglary in 2008. His sixth conviction occurred in 2010, when he received a five-year sentence for possession of a firearm by a felon. Further, in 2013 and 2014, Apostolovic had numerous traffic citations and misdemeanors for speeding, failing to stop at a red light, cutting through

7

traffic while speeding, using his cell phone while driving, driving on a suspended license, and presenting false identification to a peace officer.

Nor does it appear that Apostolovic changed his behavior after these prior convictions and infractions. His most recent crime was egregious. He was solely responsible for the murder. And the circumstances in which it occurred demonstrate a propensity for violence and an extreme sense of recklessness. After police initiated a traffic stop, Apostolovic rammed his SUV into the police car. He then led police on a high-speed chase through a residential neighborhood, running a red light and multiple stop signs until he collided with the minivan, killing a 12-year-old girl. Indeed, he admitted knowing that driving in such a manner was "dangerous to human life."

As set forth above, the trial court found "that the interest of justice [was] not served by striking" the nickel prior. Given Apostolovic's criminal history and the nature of the crime at issue, we cannot say this finding was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) Rather, a reasonable person could find that the mitigating circumstance at issue was "'neutralize[d]'" by these countervailing factors. (*People v. Walker*, *supra*, 16 Cal.5th at p. 1029; see *People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)

Finally, Apostolovic argues that the trial court erred by finding that dismissal of the nickel prior would endanger public safety. But the court never made such a finding. Rather, it found that striking the nickel prior would not serve the interests of justice. The court did not discuss public safety at all. Thus, we do not address Apostolovic's arguments concerning public safety.

## DISPOSITION

The trial court's judgment is affirmed.


MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.