Filed 5/21/21  Maria G. v. Patrick M. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARIA G.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PATRICK M.,<br><br>    Defendant and Appellant. | H046411<br>(Santa Clara County<br>Super. Ct. No. 18CH008214)<br><br><br>**ORDER MODIFYING OPINION**<br><br>**NO CHANGE IN JUDGMENT** |

The court orders that the opinion filed April 30, 2021, be modified as follows:

On page 2, first paragraph, second to last sentence, the exclamation point is replaced with a period, so that the sentence reads:

She stated, "I don't feel comfortable with my children home alone without this restraining order."

On page 3, first sentence, the following is added after the end of the sentence as footnote 2:

The documentary evidence introduced during the hearing indicated the police issued a warning citation to respondent in September 2015 due to a barking dog.

On page 3, first full paragraph, second sentence, what was previously footnote 2 is renumbered to footnote 3.

On page 6, first full paragraph, first sentence, what was previously footnote 3 is renumbered to footnote 4.

On page 8, first paragraph, first sentence, what was previously footnote 4 is renumbered to footnote 5.

On page 8, first paragraph, last sentence, what was previously footnote 5 is deleted.

The petition for rehearing filed on behalf of appellant Patrick M. is denied.

There is no change in the judgment.

_____
Greenwood, P.J.

_____  _____
Bamattre-Manoukian, J.                                  Grover, J.

Filed 4/30/21  Maria G. v. Patrick M. CA6 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARIA G., | H046411 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 18CH008214) |
| v. | |
| PATRICK M., | |
| Defendant and Appellant. | |

The trial court granted a 36-month civil harassment restraining order against Patrick M. pursuant to Code of Civil Procedure section 527.6 based on his conduct in an on-going dispute with his next door neighbor, Maria G., and her family.[1]  Patrick appeals, asserting that substantial evidence does not support the issuance of the order, that his acts do not qualify as harassment as defined in section 527.6, and that judicial bias influenced the trial court's decision to issue it.  We reject his arguments and affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Maria filed a request for a civil harassment restraining order against Patrick, seeking protection for herself, her husband, and her three children living in the household (ages 21, 14, and 9), alleging that all of them had been harassed by Patrick for the nine years they had lived in their home.  In her petition, Maria asserted that Patrick would

---

[1] To protect the personal privacy interests of those protected by the restraining order issued by the trial court, we will refer to all parties and witnesses by their first names and last initials in the first instance, then by their first names, pursuant to California Rules of Court, rule 8.90(b)(5).

throw garbage and liquids on their cars and driveway and make noise in the middle of the night, causing "much stress and lack of sleep"; this happened most recently a few days before Maria filed her request. Maria attempted to curb Patrick's conduct by installing a "natural fence" on the property line between their two homes. She stated she was "forced to remove it to prevent Patrick from hiding behind it to throw garbage and liquids on [the family's] cars and driveway." Maria also claimed Patrick would "watch" friends who visited the family and threaten to call the police if they blocked the family's driveway although his own ingress and egress were not affected. Patrick frequently reported the family to the local police, causing the police to knock on Maria's door in the middle of the night, waking and scaring the children. Maria declared that she "feel[s] bad emotionally due to the attitude of [Patrick]," claiming she could not leave the children alone for more than an hour at a time because Patrick "transmit[s]" "insecurity" to them. She stated, "I don't feel comfortable with my children home alone without this restraining order!" The trial court denied Maria's request for a temporary restraining order pending a hearing.

In his written response to Maria's request, Patrick denied her assertions, claiming Maria and her family were the cause of problems between the neighbors because they made noise outside his windows at night, and met his requests to lower their volume with "obscenities and refusal," prompting him to call the police. Patrick identified additional objectionable conduct by Maria and her family, including: they shouted at him, called his work and urged his employer to fire him, sent him mail with a false return address, interrupted him while he was talking to other neighbors, told him Maria's husband was a member of an El Salvadorian gang and could make his life miserable, filmed him and told him they were watching him, and brought a bag of leaves to his doorstep.

At a court trial, Maria confirmed that the statements she made in her written request were true and correct. She testified that her family lived in fear, noting Patrick

2

had called the police on them approximately 30 times, with no resulting citations against the family.

Through counsel, she also introduced into evidence several video clips taken from two surveillance cameras she had installed outside of her home; she stated she installed them to, "prove what [Patrick] was doing to [the family]," and to "record what happen[s] at the property." The police told her it was acceptable to have her cameras positioned as they were.[2] The video clips reflected events that had taken place in the year prior to the trial; Maria stated she "chose the video of each of the things that [Patrick] does to us." Maria also introduced a written description of each video, which she testified accurately described the content of the video clips. The court viewed four of the five videos.

The first video showed an adult male walking onto Maria's property at night and breaking her flowerpots. Maria testified she kept the pots on her property to keep Patrick from piling garbage in the area. Although the record indicates the face of the person in the video cannot be seen, Maria asserted it was Patrick based on the way the person in the video walked, and his body type. Patrick denied he was the person seen in the video clip. He contended the video showed someone coming from down the street, rather than from his house and did not believe the video showed him or his garage. He suggested that the video had been edited, which Maria denied.

The trial court concluded that the video showed a person walk into the driveway of what appeared to be Patrick's home, and switch on a light in the garage. The court stated to Patrick, ". . . I do find that your testimony about that video is not truthful, because it's clear that the figure in that video is not just walking [d]own the street. You can track their movements. That's your garage. And I accept the petitioner's representation of her

_____

[2] Maria's counsel made an offer of proof that the fifth clip showed a discussion between Patrick and a police officer concerning the location of Maria's cameras; as Maria testified the officer told her the cameras were acceptable, the court determined it did not need to review that clip.

3

testimony that that is you. So I do not find your statements about that video to be believable."

Maria claimed the next clip showed Patrick putting up a "provisional fence" that she believed was unsafe or hazardous, and that blocked the gate on her property. Along with the video, Maria introduced photographs of wood blocking her gate, and a fence falling down. Patrick confirmed that he was the person in the clip, but claimed he was simply moving a piece of fence, and denied putting it on Maria's property. Patrick stated he put up a divider to prevent garbage from being kicked into his yard. He admitted that some of the photographs showed the fence leaning over into Maria's property line in a way that could be precarious if it fell over, but he denied putting the fence in that position.

The third video clip showed Patrick throwing a piece of trash from his yard into Maria's yard. Maria introduced photographs showing garbage in her yard and ketchup on her car. She indicated she did not see who put ketchup on her car, and the video does not show the incident. Patrick denied putting anything on Maria's car. However, he admitted to throwing garbage onto Maria's property, claiming he was returning trash the family had left on his property to them. Patrick opined someone else could have vandalized the car, contending Maria's husband, Lorenzo, previously complained about workers he had hired coming back to the house, breaking locks, and stealing items. Maria denied Lorenzo had made any such complaints.

The final video clip showed Patrick putting his garbage can on top of Maria's plants; Maria testified that Patrick "destroys [her] plants." Patrick did not provide any testimony about this video clip.

Esteban, Maria's 14-year-old son, testified that he felt fear and anxiety as Patrick's neighbor, stating it is, "almost like a ticking time bomb where we don't know what [*sic*] he would react if anything would happen. And that's what is kind of scary. . . ." Esteban noted that he and his sister are sometimes home alone, and they do not know if Patrick is

4

"going to be able to call the police for something that he thinks is very unfair." Esteban witnessed Patrick harass his parents. Esteban also heard Patrick banging on trashcans in the night, around midnight or 1:00 a.m., while Esteban was trying to sleep. Esteban testified Patrick made this noise every night, approximately every three minutes over the course of an hour. Esteban confirmed that the police had come to his house because Patrick called them; he did not have any knowledge as to whether the police issued citations to the family.

Patrick testified on his own behalf, responding to the video evidence and producing his own evidence. He introduced photographs of: overturned garbage bins; garbage left in his yard clippings bin; food items "cast onto" his side and front yards; the smashed divider he put up to prevent food and garbage from being "kicked over onto the side yard from [Maria's] side yard"; the location of the cameras on Maria's house, which he believes were installed to point directly at his house, unlike normal security cameras; and scratch marks on his vehicle. Patrick did not see who knocked over the garbage bins or threw food in his yard clippings bins. However, he noted the clippings bin was near his house, far from the sidewalk, and he observed items left in the bin in a pattern that caused him to believe that Maria or her family members were responsible. Similarly, Patrick did not see how the scratches came to be on his vehicle; the car was parked on his driveway adjacent to the lot line with Maria's house. They appeared shortly after Patrick called the police to report the amplified music coming from Maria's yard, as well as the vehicles parked on her property; he thus believed his car was scratched by Maria's family as retribution for his complaint. Patrick observed Lorenzo "come out of his house, slam [one of Patrick's] garbage can[s] very wildly and overturn [another]." Patrick contacted the police, introducing the responding officer's card into evidence at the hearing.

Patrick also introduced into evidence a letter Maria wrote to him. The envelope lists the return address as "The Murphy fam.," in Mountain View; the letter inside lists Maria and the other members of her family in the "from" line. It states, " 'TO MY

5

NEIGHBOR' [¶] Thank you for make our life more difficult. Thank you because of you were are learning to have patience. Thank you for being involved in every hard moment in our life. Thank you because of you I met a lot of people in police department. Thank you because of you we know how is to be sued for someone. I think you must feeling proud of your self for been a such bad neighbor. I hope you find peace in your heart one day." (Original spelling and grammar.) Maria confirmed that she sent the letter.

Patrick provided a declaration from Michael, a past chairperson of the parties' neighborhood association.[3] Michael claimed Maria contacted him, asking the association to take action against Patrick, saying he was "evil because he would ask [Maria] to move her pool table inside after dark instead of playing pool, drinking and shouting on the patio at night." Maria also indicated Patrick was bothering her because Patrick would ask the family to move the amplified music inside or turn the volume down. Maria told Michael that "her family had come all the way from Central America and had a right to do whatever they wanted." Maria became angry when Michael offered to mediate the issue between the parties rather than take action against Patrick based solely on her allegations.

Patrick argued that none of the evidence before the court indicated that Maria was fearful or had any concern for her children; nor did it reveal that Maria had asked Patrick to stay away from them. Rather, Patrick contended Maria and her family were the ones initiating contact with him. Not only did Maria send him a letter, he testified that Maria had come to his door three times for various reasons, and showed no signs of fear. Patrick testified that Maria's daughter greeted him when she passed him on her bike. Esteban, despite testifying that he had fear or anxiety related to Patrick, came to Patrick's house and asked if he could pick apples from Patrick's tree, which Patrick allowed. Patrick contended that the evidence concerning Maria and her family's conduct made it "inconsistent to say they are fearful."

---

[3] The court admitted Michael's declaration into evidence over Maria's attorney's objection, and indicated it would consider the declaration in making its ruling.

6

Patrick confirmed that he called the police on Maria and her family "a couple of dozen" times, believing the police cited the family on several occasions concerning their barking dog. Maria's attorney produced several pages of documents entitled "Detailed History for Police Event," with various event numbers, which the court marked for identification. The attorney showed the documents to Patrick, who indicated he had not seen them before the court proceedings and would need time to review them. The court directed the attorney to "just cross examine the witness." The attorney did not ask Patrick any questions about the detailed history documents.

After each party concluded their evidentiary presentation, the court admitted all of the proffered evidence, with the exception of a document Maria offered pertaining to mediation. Patrick did not object to the admission of any evidence.

At the end of the hearing, the court took the matter under submission to review the evidence. However, it made certain findings before doing so: "[Patrick], I found that your testimony was not truthful in certain regards, specifically in regard to the first vignette that was shown on video. It is pretty clear to the Court that the person who engaged in the vandalism was somebody coming from your property and not just walking down the street. [¶] And moreover, I find the petitioner's testimony credible that the person [in] the video was you, sir." The court also questioned the credibility of Patrick's testimony as to the number of times he called the police, "because it's pretty clear that you called [the police] a lot more frequently than what you attested to." The court did not find Patrick's explanation regarding why he threw garbage into Maria's yard satisfactory, noting that Patrick was responsible for instigating vandalism that happened to be caught on video. While the court suspected "there's a lot more stuff going on back and forth," it focused on the evidence before it, which included "the benefit of the video" that provided "clear evidence of the type of conduct that's going on there." The court took the matter under submission and set a return date to issue its decision.

7

By the time the parties returned to court, Patrick had filed a cross-request for a restraining order against Maria, as well as a separate request for an order against Lorenzo.[4]  After determining those matters were not yet ripe for hearing, as they had not been timely served, the court rendered its decision on Maria's request for a restraining order against Patrick, finding that Maria met the burden of proof for the requested relief. The court issued a 36-month restraining order against Patrick, "under the terms requested."[5]

On the day of this hearing, Patrick filed a declaration stating he was not given a copy of any of the paper exhibits Maria introduced at the August hearing, that he did not have an opportunity to respond to these exhibits, and that Maria's attorney had not responded to his post-hearing requests for copies of the exhibits.  Both before and after the court issued the restraining order, Patrick attempted to raise concerns over the documentary exhibits.  The court indicated the matter was already under submission, as clearly stated on the record, and the court had issued its ruling, such that Patrick could seek legal counsel and file appropriate paperwork to seek reconsideration if appropriate. Patrick did not seek reconsideration prior to timely filing notice of this appeal in

---

[4] Maria filed a Respondent's Appendix that includes the minute orders from hearings the court held regarding Patrick's requests in September and November 2018. In Respondent's Brief, Maria cites to these minute orders, as well as entries on the trial court's Register of Actions made after the court ruled on Maria's request for a restraining order against Patrick.  "It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered."  (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.)  We will not consider subsequent events in evaluating Patrick's appeal.

[5] In the resulting written order, the trial court listed only Maria's three children as additional protected parties; in the request, Maria asked to include Lorenzo as a protected party as well.  Nothing in the record indicates the trial court intended to exclude Lorenzo when issuing its order.  Under the circumstances, the oral order should prevail.  (See *People v. Smith* (1983) 33 Cal.3d 596, 599; *In re Marriage of Brewster and Clevenger* (2020) 45 Cal.App.5th 481, 517.)

8

November 2018. (Cal. Rules of Court, rule 8.104(a)(1).) The restraining order is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a)(6), as an order granting an injunction.[6] (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 187.)

## II. DISCUSSION

### A. Standard of Review

Section 527.6 authorizes a person who has suffered harassment as defined in the statute to seek an order prohibiting such conduct. (§ 527.6, subd. (a).) After a hearing, if the trial court finds "by clear and convincing evidence that unlawful harassment exists," the court "shall issue" an order "prohibiting the harassment." (§ 527.6, subd. (i)). "An injunction restraining future conduct is . . . authorized when it appears that harassment is likely to recur in the future. [Citation.]" (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 496 (*Harris*).)

"We review the trial court's decision to grant the restraining order for substantial evidence." (*Harris*, *supra*, 248 Cal.App.4th at p. 497.) " 'The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. [Citation.] But whether the facts, when construed most favorably in [petitioner's] favor, are legally sufficient to constitute civil harassment under [Code of Civil Procedure] section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review.' " (*Ibid.*)

### B. The Trial Court's Findings for the Issuance of the Restraining Order Are Supported by Substantial Evidence

Harassment is defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of

---

[6] All undesignated statutory references are to the Code of Civil Procedure unless otherwise noted.

9

conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).) A "course of conduct" is defined as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or computer email." (§ 527.6, subd. (b)(1).)

Patrick asserts that the trial court issued the restraining order in error because substantial evidence did not support its finding that he harassed Maria and her family. The trial court concluded the harassment consisted of actions that constituted a course of conduct resulting in emotional distress to Maria and her family: "So it's a course of harassing conduct that's being alleged here as opposed to an act of violence or a specific threat of violence." We thus consider whether substantial evidence supports the trial court's implied finding, by clear and convincing evidence, that Patrick engaged in a course of conduct that constituted unlawful harassment under section 527.6, subdivision (b)(1).

As recently stated by the Supreme Court in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, "when reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probably that the fact was true. Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the

10

evidence." (*Id*. at pp. 995-996.)[7] A trial court issuing a restraining order under section 527.6 is not required to make express findings; the granting of the order implies that the trial court made all necessary findings. (See *Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 88-89.)

We conclude there is substantial evidence in the record to support the trial court's implied finding that Patrick engaged in harassment through a course of conduct under section 527.6. Viewing the record in the light most favorable to Maria as the prevailing party, the evidence demonstrates that over the nine year period of this dispute between neighbors, Patrick regularly threw garbage onto Maria's property and car, vandalized her personal effects, trespassed on her real property, and repeatedly made loud and repetitive noise between midnight and 3:00 a.m. that disturbed Maria and her family and caused them distress. The trial court expressly found that Patrick was not credible. By implication, the trial court found Maria's testimony and declaration credible. The trial court is the ultimate judge of credibility; we will not reject its determination if it is supported by the evidence. (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1229 (*Parisi*), disapproved on other grounds by *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1010, fn. 7.)

Patrick argues that the trial court relied heavily on the video evidence presented by Maria, and that this did not suffice to meet the required burden. But Maria testified that the video clips represented examples of Patrick's on-going conduct, not the totality of his actions. She installed the video cameras at the house in order to "show what Patrick was doing," stating she selected portions of the videotape which showed "each of the things" that Patrick had been doing. Further evidence was received through Maria's declaration, the testimony of Maria and Esteban at the hearing on the restraining order, and photos.

---

[7] The Supreme Court issued its opinion in *Conservatorship of O.B.* after this appeal was fully briefed. We received supplemental briefing from the parties addressing the effect, if any, the ruling had on our review of this matter.

11

Maria stated in her declaration that over the course of her nine years in the residence, Patrick would throw garbage onto her property and car and make noise in the middle of the night, disturbing her family's sleep. Although Patrick disputed Maria's contentions, "[d]eclarations favoring the prevailing party's contentions are deemed to establish the facts stated in the declarations, as well as all facts which may reasonably be inferred from the declarations; if there is a substantial conflict in the facts included in the competing declarations, the trial court's determination of the controverted facts will not be disturbed on appeal." (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137-1138.) The video clips were provided as corroborating evidence of Patrick's conduct over the course of nine years that Maria described in her declaration in support of the restraining order request.

Patrick also objects that there was no eyewitness testimony linking him to any alleged act of harassment and that the inference drawn by the trial court that he committed the acts over time was unreasonable. We disagree. The court accepted Esteban's testimony that he heard loud noises coming from Patrick's home every night, and Maria's declaration supported that claim. The court credited Maria's declaration that trash was thrown onto her property over the years. Patrick himself admitted that he was the individual in the video throwing trash onto Maria's property, which he clearly felt was justified in his ongoing dispute with his neighbors. It was within the court's discretion to consider this circumstantial evidence, thereby concluding that Patrick had both repeatedly thrown garbage onto Maria's property and had regularly made loud, banging noise at an unreasonable hour. (§ 526.7, subd. (i) [court can consider any relevant evidence].) Circumstantial evidence "is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts." (*Hatfield v. Levy Bros.* (1941) 18 Cal.2d 798, 805; accord *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1206-1207.) We conclude that the trial court's inference here was reasonable.

Patrick argues that what was not seen on the videos played by Maria is more significant that what was shown because Maria's conduct, detailed in his declaration in opposition to the issuance of the restraining order, instigated his response. This argument fails to appreciate the standard of review this court must apply; regardless of whether evidence existed to support a different conclusion, such as additional video footage that might have shown bad conduct by Maria or her family, our concern is whether the videos the trial court watched, viewed in the light most favorable to Maria, support the express and implied findings the court made. (See *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1011-1012; *Parisi*, *supra*, 5 Cal.App.5th at p. 1226.) Patrick also did not object to the videos based on a lack of foundation, an argument he now raises on appeal. Nor did he object to the court admitting into evidence the written description of the videos. By failing to object, Patrick implicitly waived or forfeited any arguments he has concerning the foundation of the video clips. (*Doers v. Golden Gate Bridge, Highway & Transp. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 (*Doers*); *Brewster*, *supra*, 45 Cal.App.5th at p. 512.)

Patrick further contends the trial court erred in considering that he made approximately 30 "privileged calls" to the police that resulted in police activity at Maria's residence, as a basis for issuing the restraining order. Maria asserts that the calls were made without cause, while Patrick contends he was justified in seeking assistance from the police because Maria disturbed his peace. But Patrick did not raise an objection to the trial court either hearing testimony about the calls, or considering the document detailing Patrick's history of calls to law enforcement. While Patrick did note that he needed time to review that document, he did not object when the trial court indicated Maria's attorney should ask any questions she had about the document, nor did he object when the trial court admitted that document, or any of Maria's other "paper exhibits," as Patrick refers to them on appeal, into evidence. By failing to object to the introduction of this evidence, Patrick waived or forfeited his arguments on appeal, including his claim

13

that the trial court violated his due process rights by admitting the documentary evidence. (*Doers*, *supra*, 23 Cal.3d at p. 184, fn. 1; *Brewster*, *supra*, 45 Cal.App.5th at p. 512.)  But even if the trial court erred when it considered the police calls as evidence of harassment, there is ample evidence that Patrick repeatedly committed other acts that constituted course of conduct harassment.

### C. *Patrick's Conduct Was Ongoing*

Patrick argues that the record does not support an implied finding of ongoing harassment because the trial court took the matter under submission, and thus did not have current information about the status of the parties and their conduct at the time it issued its restraining order.[8]  Under the law, "the course of conduct must be ongoing *at the time the injunction is sought*" (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 333), and it must appear that the harassment is likely to recur in the future (*Harris*, *supra*, 248 Cal.App.4th at p. 496).  Here, Maria's declaration indicated that Patrick's behavior was current with her request for the restraining order, and Esteban testified that loud noises emanated from Patrick's house every night.  While some of the videos Maria introduced were from a year or more prior to her seeking the order, two of the four videos the court viewed were dated only a week prior to Maria filing her request.  There is substantial evidence supporting the implied finding that Patrick's conduct was ongoing at the time Maria requested the restraining order.

---

[8] Patrick also alleges in his reply brief, that the trial court erred as a matter of law when it took the case under submission at the close of the trial, claiming that the error is per se reversible.  Patrick raises this claim for the first time in his reply brief; his arguments are outside the scope of claims made by Maria in her response, and he provides no explanation for his failure to include the argument in his opening brief.  (See *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, as modified (May 5, 2005); *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 973.)  Moreover, Patrick did not object to the trial court taking the matter under submission.  (*Doers*, *supra*, 23 Cal.3d at p. 184, fn. 1; *Brewster*, *supra*, 45 Cal.App.5th at p. 512.)  As a result, we will not consider this issue on appeal.

14

### D. Patrick's Conduct Was Directed at a Specific Person/People

When it granted Maria's request for the restraining order, the trial court implicitly found Patrick's conduct was directed at Maria; Patrick argues there is insufficient evidence to support that finding. Aside from referencing section 527.6, subdivision (b), Patrick does not cite any additional legal authority discussing what that provision means when it says that harassment is "a knowing and willful course of conduct directed at a specific person. . . ." The evidence, discussed above, is sufficiently substantial to show Patrick directed his conduct at Maria and the other residents of her home. The context of Patrick's behavior was a longstanding dispute with Maria and her family. Thus, the trial court did not err in implicitly finding Patrick's conduct to be directed at Maria. Moreover, section 527.6, subdivision (c) provides that "[i]n the discretion of the court, on a showing of good cause, a temporary restraining order or order after hearing issued under this section may include other named family or household members." The court could reasonably infer that Patrick's purpose was to harass all members of the household. Patrick does not demonstrate the court abused its discretion when it included all of the household members as protected persons. (See *Parisi*, *supra*, 5 Cal.App.5th at p. 1234.)

### E. Patrick's Conduct Caused Substantial Emotional Distress

To justify the issuance of a restraining order, the course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).) Patrick contends his conduct would not have caused a reasonable person substantial emotional distress, and that Maria failed to present evidence that his conduct caused her substantial emotional distress. Patrick likens this case to the facts of *Schild v. Rubin* (1991) 232 Cal.App.3d 755 (*Schild*), in which the appellate court found evidence of substantial emotional distress lacking, and thus reversed the trial court's issuance of a restraining order under section 527.6.

15

In *Schild*, the respondents played basketball in their backyard three to five times per week between 9 a.m. and 8 p.m.; their backyard neighbors sought a restraining order, amongst other relief, alleging the noise interrupted weekend naps and interfered with their ability to rest and relax in their home. (*Schild, supra,* 232 Cal.App.3d at pp. 758-760.) The court of appeal determined this evidence was not sufficient to support a restraining order: "The noise from a ball and the verbal chatter by several people engaged in recreational basketball play in the residential backyard described herein, playing at reasonable times of the day for less than 30 minutes at a time and no more than five times per week, does not constitute unlawful harassment under section 527.6." (*Id.* at p. 761.) Noting that the record did not include "medical, psychological or other evidence . . . that the sounds of basketball playing, however offensive and annoying, caused the [petitioners] 'substantial emotional distress,' within the meaning of Code of Civil Procedure section 527.6. . . ," the appellate court found that, even if the conduct did cause petitioners such distress, "the basketball playing in the time, place and manner as described which occurred prior to the restraining order and injunction would not 'cause a *reasonable person* to suffer substantial emotional distress.' (Code Civ. Proc., § 527.6, subd. (b), italics added.)" (*Id.* at p. 763.) "The [petitioners'] basketball playing occurred in a time, place and manner which constituted a reasonable use of their property. Accordingly, the [petitioners'] basketball playing was not so outrageous, extreme, intense or enduring as to come within the scope of injunctive relief for willful harassment pursuant to section 527.6." (*Ibid.*)

We easily distinguish the facts here from *Schild*. Patrick was not engaging in activity at a "time, place and manner which constituted a reasonable use of [his] property." (*Schild*, *supra*, 232 Cal.App.3d at p. 761.) Patrick frequently woke the family between midnight and 3:00 a.m. by making noise and "slamming" trash into their home and cars, causing stress and lack of sleep. Patrick hid behind a natural fence between the parties' homes in order to throw things at the house, causing Maria to remove the fence.

16

Patrick erected a provisional fence in between the parties' homes that the trial court described as "precarious" and a "safety hazard." Patrick trespassed on Maria's property in the middle of the night, and destroyed her plants and broke her flowerpots—flowerpots she placed at the front of her property to prevent Patrick from putting trash on her property. Patrick's conduct could cause a reasonable person to experience substantial emotional distress and was "so outrageous, extreme, intense or enduring as to come within the scope of injunctive relief for willful harassment pursuant to section 527.6." (*Id.* at p. 763.)

While the trial court heard no expert testimony confirming that Maria was in fact experiencing "fear," "stress," and "lack of sleep," as she alleged, Patrick does not cite any legal authority stating such testimony is required to obtain a restraining order under section 527.6. While the *Schild* court noted that evidence from an expert was lacking in the case before it, it also indicated there was *no* other evidence in the record of the "substantial emotional distress" required to issue the restraining order. (*Schild*, *supra*, 232 Cal.App.3d at p. 763 (italics added).) Here, Maria testified that she experienced fear and stress, and Esteban confirmed that he had fear and anxiety as a result of Patrick's conduct, particularly when he was left alone at the house. While Patrick correctly points out that there is contrary evidence in the record potentially supporting a different conclusion, there is substantial evidence to support the trial court's implied finding that Patrick's conduct would cause a reasonable person to suffer "substantial emotional distress," and that it did cause such distress to Maria and other family members.

### F. Course of Conduct Harassment Under Section 527.6, Subdivision (b)(1) is Not Limited to the Acts Enumerated in the Statute

As discussed, *ante*, "course of conduct" harassment is defined as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by

17

any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or computer email." (§ 527.6, subd. (b)(1).) Relying on the doctrine of *ejusdem generis*, Patrick argues that only those acts enumerated in section 527.6, subdivision (b)(1), namely, stalking, making harassing telephone calls, and sending harassing correspondence, qualify as conduct that constitutes harassment under the statute. " '*Ejusdem generis* applies whether specific words follow general words in a statute or vice versa. In either event, the general term or category is "restricted to those things that are similar to those which are enumerated specifically." ' [Citation.] The canon presumes that if the Legislature intends a general word to be used in its unrestricted sense, it does not also offer as examples peculiar things or classes of things since those descriptions then would be surplusage. [Citation.]" (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141.) Patrick contends that the examples set forth in section 527.6, subdivision (b)(1) are "specific, direct, and personal acts; had the Legislature intended other acts to be the basis of a course of conduct, the list of examples would have been unnecessary."

In support of his argument, Patrick cites *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 342 (*International Federation*), wherein the Supreme Court employed the doctrine of *ejusdem generis* to determine whether the Legislature intended that Penal Code section 832.8, subdivision (a), which makes peace officer personnel records confidential, prohibits the disclosure of a peace officer's salary. The Supreme Court determined "that the Legislature did not intend the words 'personal data' to carry their broadest possible meaning, encompassing any and all information related to a particular officer," noting the statute "includes a general term—'personal data'—followed by a nonexhaustive list of specific examples—marital status, family members, educational and employment history, home addresses' …." (*Id*. at pp. 341-342.) Based on its interpretation of the statute's

18

language, the Court concluded that a police officer's salary did not qualify as "personal data" under the statute and was therefore not confidential information.

By analogy, Patrick argues that the "activities ascribed to [him] are not similar to the examples given in [section 527.6]," and thus cannot form the basis for a civil harassment restraining order against him. We are not persuaded. "The doctrine of *ejusdem generis* is simply a rule of statutory construction that will not be applied to defeat legislative intent. . . . [Citations.] Indeed, 'to the extent the doctrine results in a strict construction of the statute, it has been abolished in California.' [Citation.]" (*Eller Media Co. v. Community Redevelopment Agency* (2003) 108 Cal.App.4th 25, 38.) "[T]his principle is not applied if the result would be contrary to legislative intent or when no manifest reason appears for excluding one matter and including another… [Citation.]" (*International Federation*, *supra*, 42 Cal.4th at p. 344.)

The application of the *ejusdem generis* doctrine to section 527.6 would thwart the intent of the Legislature when it enacted the civil harassment restraining order statute. "The court in *Smith v. Silvey* (1983) 149 Cal.App.3d 400, recounted a portion of the legislative history in order to explain the statute's purpose: 'An analysis prepared for the Senate Committee on Judiciary (1977-1978 Reg. Sess. Assem. Bill No. 3093) saw the purpose as follows: "Under existing law, a victim of harassment may bring a tort action based either on invasion of privacy or on intentional infliction of emotional distress. Where great or irreparable injury is threatened, such victim may obtain an injunction under procedures detailed in [section] 527(a). [¶] This bill would establish an expedited procedure for enjoining acts of 'harassment' as defined, including the use of temporary restraining orders. . . . [¶] The purpose of the bill is to provide quick relief to harassed persons." ' [Citation.]" (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 403 (*Russell*).) As Patrick's narrow interpretation of section 527.6 defeats the Legislature's intent when it enacted the statute to provide relief for all persons suffering from the emotional distress of harassment who require relief that can be obtained immediately, whether the

19

harassment is received in person, by mail, by computer, by phone, by stalking, or by any other method, we reject his argument.

### G. The Facts Are Legally Sufficient to Constitute Course of Conduct Harassment Under Code of Civil Procedure Section 527.6

Patrick contends that even if we conclude that substantial evidence supports the trial court's findings that he committed the acts as alleged, they do not constitute course of conduct harassment as a matter of law. We disagree. "Section 527.6 is intended 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' (Stats. 1978, ch. 1307, § 1, p. 4294; see Cal. Const. art. I, § 1.)" (*Russell, supra,* 112 Cal.App.4th at p. 403.) The family home is the place where individuals naturally expect to not only pursue, but achieve safety, happiness and privacy. Patrick's acts of nighttime trespass, vandalism, distribution of garbage on the property, and nighttime noise fall into the category of behavior that "seriously alarms, annoys or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd., (b)(3).) These acts over a period of time caused Maria and her family, including her children, to experience fear and distress. We conclude that Patrick's conduct constitutes harassment justifying injunctive relief under section 527.6.[9]

### H. Patrick Forfeited Claims of Judicial Bias and Prejudice

Patrick contends the trial court's "bias and prejudgment of the facts led it to disregard the statutory requirements and make an incorrect decision." Patrick did not raise these concerns to the trial court, either during the trial, in the intervening period between the trial and the announcement of the court's ruling, or at the hearing at which the court made that ruling. Patrick cannot raise these arguments for the first time on

---

[9] In her responsive brief, Maria argues the act of calling the police to her home without cause should be considered a credible threat of violence, in light of instances of so-called "SWATing" that have occurred in recent years. As we affirm the order based on the trial court's evaluation of the evidence as course of conduct harassment of section 527.6, subdivision (b)(3), we need not consider whether Patrick's calls to the police constituted a credible threat of violence.

20

appeal.  (*Guardianship of C.E.* (2019) 31 Cal.App.5th 1038, 1054; *Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.)  Notably, under section 170.3, subdivision (c)(1), such claims, which, if supported, constitute a basis to seek disqualification of a judicial officer under sections 170.1 and 170.3, must be made "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification."  Patrick did not do so.

### III.  DISPOSITION

The civil harassment restraining order is affirmed.  In the interests of justice, each party shall bear his or her own attorney fees and costs on appeal.

_____
Greenwood, P.J.

WE CONCUR:


_____
Bamattre-Manoukian, J.


_____
Grover, J.

Maria G. v. Patrick M.
No. H046411