Filed 2/17/22  Sullivan v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JULIA SULLIVAN,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SANTA CLARA<br><br>    Respondent,<br><br>SHAWN SULLIVAN,<br><br>    Real Party in Interest. | H048294<br>(Santa Clara County<br> Super. Ct. No. 18FL001837) |

Over petitioner Julia Sullivan's objection, the trial court issued an order granting real party in interest Shawn Sullivan authority to determine whether the parties' minor children should be vaccinated.  Julia[1] petitions this court for a writ of mandate, prohibition, or other appropriate relief, alleging the trial court erred in issuing the order.  She claims the trial court abused its discretion by hearing the issue without first requiring the parties to participate in child custody mediation.  She further contends the court abused its discretion in refusing her request for an evidentiary hearing.  We conclude the trial court erred by failing to require the parties to first mediate the issue as required by

---

[1] As is customary in family law cases, for purposes of clarity we refer to the parties by their first names.  (*In re Marriage of Miotke* (2019) 35 Cal.App.5th 849, 851.)

Family Code sections 3170 and 3175.  We will grant the petition and issue a writ of mandate.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Julia and Shawn are the parents of two minor children, Daughter (born in 2008) and Son (born in 2011).  The trial court obtained jurisdiction over issues of child custody when Shawn filed a petition for dissolution of his marriage with Julia in May 2018.

In July 2018, following an emergency screening,[2] Shawn and Julia stipulated to temporary custody orders, under which they shared joint legal and physical custody of the children.  Among other provisions, the orders provided that "[b]oth parents shall inform each other in writing 72 hours before any routine medical check appointments.  Both parents are responsible for contacting providers to provide and obtain information about the children.  Both parents shall provide the other parent's contact information on all emergency contact forms for the children.  Both parents shall provide all of the children's medical, psychological, educational and extra-curricular activity information to each other.  No decision about the children's education, medical care, psychological care and extra-curricular school activities shall be made without the consent of the other parent."  The stipulated order provided that the order would remain in full force and effect pending further order from the court.  The parents agreed to register for parent orientation through Family Court Services and attend mediation.[3]

---

[2] "In [any] case in which there are serious safety risks to the child/ren, the Court may order a staff member of FCS [Family Court Services], other than the mediator, or a private screener, at the parties' expense, to conduct an 'emergency screening' (a preliminary and limited investigation), to make recommendations regarding the temporary custody, visitation, and related conditions for the minor children."  The parties may agree to the recommendations or the trial court may conduct a hearing to decide whether to adopt the recommendations as a temporary order.  (Sup. Ct. Santa Clara County, Local Fam. Rules, former rule 2(C)(7).)

[3] From the record before us, it appears the parents subsequently modified the stipulated custody order resulting from the emergency screening, but neither party

### A. *Shawn's Request for Order*

In June 2020, Shawn filed an ex parte application seeking temporary emergency orders to change child custody and an order shortening time for hearing and service of his request. Specifically, Shawn asked the court to order Julia to vaccinate the children, or, alternatively to modify legal custody so that he had "the exclusive right to make final decisions as to vaccine related medical issues." In support of his request for orders, Shawn alleged that Julia "refus[ed] to vaccinate [the] children per the recommendations of their doctor," that Julia had "a long history of making questionable decisions for [the] children," and that she subjected the children to "psychological abuse . . . ." Shawn claimed that Julia was an "antivaxxer," and had joined a "radical anti-vaccine group on Facebook" in 2013, leading her to attend protests and sign "anti-vaccine petitions." Julia had filed medical exemption letters with the children's school in 2016, which Shawn asserted were false. Although Daughter's letter stated that she has a condition that makes immunization unsafe, Shawn indicated that Daughter had no such condition, and had received vaccinations as recently in March 2009 with no resulting side effects. Son had not received any vaccinations at the time Shawn filed his request.

Shawn attached a letter from the children's pediatrician, Dr. Trager, recommending that they receive "all necessary vaccinations." Dr. Trager also recommended that the children get "current with their DTap vaccines prior to the arrival of their sibling." Shawn also indicated that he was expecting a child with his new spouse. Alleging that a newborn baby is particularly susceptible to whooping cough, Shawn claimed that "[t]he CDC recommends that all persons who come into contact with a newborn baby should get the Tdap vaccination at least two weeks prior to the child's birth." He asserted that for the wellbeing of Daughter and Son, and for the protection of their new sibling, Shawn had asked Julia to vaccinate the children. She refused, claiming

provided us with the modified orders. We thus determine that the changes made in subsequent orders are not relevant to the issues before us.

that the exemption letter she received was supported by blood tests, which Shawn had not seen. Shawn also stated that it was important that the children were fully vaccinated due to the "rapid spread of COVID-19[.]" Julia had indicated she would not agree to vaccinate the children against COVID-19, once the vaccine was available, unless they tested negative for the COVID-19 antibodies. Believing that vaccinations were necessary to protect the health, safety, and welfare of Daughter, Son, and their new sibling, Shawn asked the court to order Julia to vaccinate the children, or change legal custody so that he alone could decide whether the children should be vaccinated.

Shawn sought an order setting the hearing on his request on shortened time due to the rapid spread of COVID-19 and the "serious health risk" the children would pose to Shawn's new baby if they remained unvaccinated. The trial court granted that request, ordering Shawn to serve the request at least five days before the hearing, which it set for July 16, 2020. In addition to the order shortening time, the trial court directed each party to complete orientation through Family Court Services and to schedule a mediation session before the hearing.[4]

### B. Julia's Opposition

Julia opposed the request for an order shortening time and, to the extent Shawn sought temporary orders pending the hearing in his request, she asked the court to deny such orders. Instead, she asked the court for a "mandatory referral to mediation with Family Court Services . . . prior to a hearing pursuant to Family Code sections 3170 ["If it appears on the face of a petition, application, or other pleading to obtain or modify a temporary or permanent custody or visitation order that custody, visitation, or both are contested, the court shall set the contested issues for mediation."] and 3175 ["If a matter is set for mediation pursuant to this chapter, the mediation shall be set before or concurrent with the setting of the matter for hearing."]." She also requested that the court

---

[4] Both parents attended orientation prior to the hearing.

4

set "a long-cause evidentiary hearing in the event [the parties] are unable to resolve this issue in mediation."[5]

In opposing Shawn's motion, Julia denied Shawn's allegations that she abused the children. She claimed the parties mutually agreed that Daughter would not have additional vaccinations, and that Son would not receive any vaccinations, after consulting with the children's then treating physician, Dr. Hicks. She further alleged that Dr. Hicks issued medical exemptions for the children after serving as their treating physician for two years, and only after doing blood tests. Julia did not attach the children's medical records to her opposition, to protect their privacy, but indicated she could provide the records to the court at the hearing.[6] Julia claimed Dr. Trager was not the children's primary treating doctor, but one of many they had seen over the years. She expressed concern that Dr. Trager was not fully informed about the issues related to the children's health care.

Julia denied having "a blanket objection to all vaccines," but based her concerns on the children's "specific medical and genetic history." She indicated that, during their marriage, both parents opposed legislation strengthening vaccine mandates; Shawn also attended rallies and protests. Julia did not believe the court should make orders based on the welfare of Shawn's new child, but expressed willingness to modify the parties' visitation schedule to account for the new child and his vaccination schedule. Further,

---

[5] Further undesignated statutory references are to the Family Code unless otherwise indicated.

[6] Although there is no evidence Julia presented the blood tests, or any medical records, to the trial court at the hearing on Shawn's request, she attached several blood tests reports to her August 25, 2020 reply to Shawn's preliminary opposition to the writ petition. Shawn filed a motion to strike portions of Julia's reply, including the blood tests, which this court denied. Shawn alleges he included an alternative request that the court "ignore" the blood tests if it denied the motion to strike them from the reply. Shawn's motion did not include an alternative request for relief. The order addressed all of his stated requests.

she asserted that neither the impending arrival of the new baby, nor the potential for a COVID-19 vaccine constituted an emergency that required an order shortening time or other emergency orders, as Shawn had known about the baby's arrival "for a long time," and there was not yet a COVID-19 vaccine for the court to consider. Julia asked the court to deny all ex parte requests and order the parties to mandatory mediation prior to holding a long-cause evidentiary hearing.

Julia filed a supplemental responsive declaration two days before the July 2020 hearing asking the court to deny Shawn's request based on his failure to cooperate in setting a mediation date with Family Court Services as required by sections 3170 and 3175. If the court determined that Shawn had made the requisite showing to warrant a hearing, she asked the court to set a long-cause evidentiary hearing so that she could present testimony from an expert witness, Dr. Neuenschwander. She asserted it was not appropriate for the court to rely only on the parties' declarations without considering an expert opinion. Julia's attorney provided a declaration stating that, due to the order shortening time, the expert had not had time to prepare a thorough report and analysis on the issues yet. The attorney made an offer of proof that the expert would testify regarding his "grave concerns" about vaccinating Son, and his belief that both children had a risk of adverse vaccine reactions. The expert did not believe that the benefit to the children in receiving vaccines, especially the DTaP ("a vaccine that combines Diphtheria, Tetanus, and acellular Pertussis vaccine into a single shot"), outweighed that risk.

### C. The Trial Court's Hearing and Order

At the hearing, the trial court stated that it was not deciding whether or not the children should be vaccinated; it was determining "which parent should be given authority under the custody rulings and orders to make a determination of whether there should be vaccination[.]" The court indicated it wanted assurance that the decisions the parties were making about vaccinations were motivated by "actual scientific medical advice [and] that they are not knee-jerk reactions to one faction or another, but they are

6

looking into the best interest of their children by making sure that as many medical experts and/or pediatricians are giving the advice necessary for them to make an educated choice." It asked the parties to explain how they educated and informed themselves on the issue of vaccinations.

Shawn stated he had met with the children's doctor and reviewed the children's medical records; he was not aware of any autoimmune disorder or other medical condition that would put the children at risk if they were vaccinated. While Shawn had previously agreed to not vaccinate the children, based on his more recent research, and in particular because of the COVID-19 pandemic, he had changed his opinion and concluded that the vaccinations were important for the children's health. In addition to the points raised in his pleadings, Shawn argued the court was required to consider the children's best interests—in particular the children's health—which was at risk if they were not fully vaccinated, including any future coronavirus vaccine. The inability to see their newborn sibling for two months if they were not vaccinated would also affect the children.

Julia argued that the COVID-19 pandemic had no bearing on the proceedings, as there was not yet a vaccine available at the time of the hearing. She also contended that Dr. Trager was not the children's only treating physician; Dr. Hicks had treated the children, with Shawn's knowledge. Julia again requested that the court set a long-cause hearing so the expert could inform the court of specific issues impacting the children, to hear evidence from the medical experts before making a decision, and that the court first require the parties to attend mediation.

The trial court declined to set a long-cause hearing, stating that such a hearing would focus on the efficacy of vaccinations, rather than what the court believed it was called to do under the relevant statutes: determine which parent was best suited to have authority to decide whether to vaccinate the children. The court did not explicitly address Julia's request for mediation. The court then ordered that Shawn would have authority to

decide the timing and appropriateness of vaccinations, with additional conditions that each parent would first designate an expert knowledgeable on the issue of vaccinations, and the parties would meet with these experts before Shawn made the decision, so that each parent could hear the best argument from the other's point of view. The court set deadlines by which the parties would meet and confer to schedule the meeting with the experts.

Julia timely filed the instant petition for writ of mandate or other appropriate relief; shortly thereafter we issued an order staying the trial court's order granting Shawn authority over vaccination for the children. After receiving preliminary opposition and reply pleadings from Shawn and Julia, we issued to the trial court an order to show cause why a peremptory writ should not issue as requested in the petition, and extended the temporary stay on the trial court's order.

## II. DISCUSSION

Julia contends the trial court abused its discretion when it heard the contested custody matter without first requiring the parties to participate in mediation pursuant to section 3170. She further argues the trial court erred by refusing her request for an evidentiary hearing. We determine that Shawn sought a modification of legal custody and that the trial court thus abused its discretion by failing to require the parents to mediate their custody dispute before awarding decision making authority over the administration of vaccinations to Shawn. On that basis we will grant Julia's petition.

### A. Standard of Review

"We review custody and visitation orders for an abuse of discretion, and apply the substantial evidence standard to the court's factual findings. [Citation.] A court abuses its discretion in making a child custody order if there is no reasonable basis on which it could conclude that its decision advanced the best interests of the child. [Citation.] A court also abuses its discretion if it applies improper criteria or makes incorrect legal assumptions. [Citation.]" (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487,

8

1497.)  We review issues of statutory interpretation de novo.  (*Guardianship of C.E.* (2019) 31 Cal.App.5th 1038, 1051.)

### B. Mediation was Required under Section 3170 because Shawn Requested that the Trial Court Modify Legal Custody.

The Family Code establishes two categories of custody, legal and physical. (§ 3000 et seq.)  " 'Joint legal custody' means that both parents shall share the right and the responsibility to make the decisions relating to the health, education, and welfare of a child."  (§ 3003.)  " 'Sole legal custody' means that one parent shall have the rights and the responsibility to make the decisions relating to the health, education, and welfare of a child."  (§ 3006.)  The trial court has continuing jurisdiction to modify custody orders throughout a child's minority whenever it finds a modification is "necessary or proper" to serve the child's best interest.  (§§ 3022, 3087, 3088.)

Section 3170, subdivision (a) requires that the parties mediate custody and visitation disputes prior to the trial court conducting a hearing on the contested matter: "If it appears on the face of a petition, application, or other pleading to obtain or modify a temporary or permanent custody or visitation order that custody, visitation, or both are contested, the court shall set the contested issues for mediation."  "If a matter is set for mediation pursuant to this chapter [§ 3160 et seq.], the mediation shall be set before or concurrent with the setting of the matter for hearing."  (§ 3175.)  The Legislature has expressly described the value of mediation in custody disputes.  "The purposes of a mediation proceeding are as follows:  [¶] (a) To reduce acrimony that may exist between the parties.  [¶] (b) To develop an agreement assuring the child close and continuing contact with both parents that is in the best interest of the child, consistent with Sections 3011 and 3020.  [¶] (c) To effect a settlement of the issue of visitation rights of all parties that is in the best interest of the child."  (§ 3161.)  With these basic principles in mind, we consider 1) whether Shawn requested a modification of custody orders that required the family court to order mediation, 2) whether the court had discretion to waive or forego

the requirements of the statutes mandating this process, and 3) if the trial court erred by failing to require mediation in advance of conducting a hearing, whether Julia has demonstrated prejudice.

### 1. *Shawn sought modification of legal custody.*

On the face of Shawn's request for orders, he asked the trial court to order Julia to vaccinate the children or modify legal custody so that he could decide vaccination issues, specifically asking that the court "[a]ward [him] legal custody as to vaccine related medical issues only." Furthermore, he set forth Julia's opposition to his request in his pleadings. As the court was thus aware that the issue of vaccination authority was contested, Julia asserts that the trial court was required under the plain language of sections 3170 and 3175 to order the parties to mediate their dispute prior to hearing any dispute on the modification request. In response, Shawn argues that his request did not seek to " modify a temporary or permanent custody or visitation order" under section 3170; rather, it was a request to clarify or implement the pre-existing temporary joint legal custody order. He contends the court was not required to set the matter for mediation under section 3170 before hearing his requests.

In support of his argument that he did not seek a modification of custody, Shawn does not cite any case excusing the mandatory mediation requirements of sections 3170 and 3175. Rather, he relies on numerous cases in which the trial court conducted an evidentiary hearing and subsequently modified existing custody orders. On appeal, the parent whose visitation or other access to the child was modified argued that the trial court erred when it failed to make a finding of changed circumstances that justified altering the arrangement of custodial rights between the parents. In each case, the appellate court determined that there had been "no change of custody" requiring "a persuasive showing of material changed circumstances." (*In re Marriage of Birnbaum* (1989) 211 Cal.App.3d 1508, 1513 (*Birnbaum*).)

10

It is well established that not every modification to the parents' visitation schedule amounts to a change in physical custody requiring a finding of changed circumstances. (See *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1379-1381 (*Enrique M.*) [addition of one extra overnight visit per week, plus an additional overnight visit every other week did not amount to change in physical custody, but rather an alteration of the parenting schedule]; *Birnbaum*, *supra*, 211 Cal.App.3d at p. 1513 [an order modifying the coparenting residential arrangement does not constitute a change of custody where mother had children during the week and father on weekends and Wednesday afternoons but was changed to father during the week three out of four weeks and mother on weekends and Wednesday afternoons, with schedule reversed during summer, and children enrolled in school near father]; *In re Marriage of Lucio* (*Lucio*) (2008) 161 Cal.App.4th 1068, 1079 [changed circumstance rule applies to a modification request seeking a change in a final determination of custody, but not to a "modification request seeking a change in the parenting or visitation schedule" where the change "would not destabilize the custody arrangement or disrupt established patterns of care and emotional bonds. . . ."].)

Applying the reasoning in *Lucio* related to changes in visitation or parenting schedules to a parent's request to alter certain features of a legal custody order, the appellate court in *In re Marriage of Furie* (2017) 16 Cal.App.5th 816 (*Furie*), upheld a trial court order granting mother's request for "sole authority" over the children's orthodontic care in the context of a complex dispute regarding child and spousal support, despite a stipulated judgment awarding the parents joint legal custody of the children. Mother alleged father "refus[ed] to coparent on orthodontic issues." (*Furie,* at pp. 820, 822.) The appellate court, with minimal discussion, concluded it saw "no reason to require a 'changed circumstances' test when a modification amounts to something less than a change of legal custody." (*Id.* at p. 827.) Similarly, in *Enrique M.*, the appellant sought orders changing not only the arrangement of the child's time with each parent, but

11

also the child's "school situation," arguably invoking issues concerning legal custody (see §§ 3003, 3006). The father wanted the child to be enrolled in a particular "track" schedule at his current school, or, alternatively, father wanted to enroll the child in a different school. (*Enrique M.*, *supra*, 121 Cal.App.4th at p. 1376.) The appellate court determined the father was not seeking to modify the parties' preexisting joint custody arrangement in doing so; the requested changes only served to alter the parenting schedule. (*Id*. at p. 1382.) From these cases, Shawn reasons that he similarly was not seeking a modification of custody at all, and thus section 3170 does not apply here.

We are not persuaded by Shawn's reliance on these authorities to excuse participation in mandatory mediation. The parties in *Birnbaum*, *Enrique M.*, *Lucio* and *Furie*, were indeed seeking a modification—or change—of existing custody orders. The question before the appellate courts was whether the trial court was required to make a finding of changed circumstances to justify the requested change. (*Furie*, *supra*, 16 Cal.App.5th at p. 827 ["no reason to require a 'changed circumstances' test when a modification amounts to something less than a change of legal custody."]) The appellate courts recognized the value of stability and continuity in custody arrangements, and the need to avoid disruption of final judicial custody determinations except when the parent seeking the modification demonstrates a significant change of circumstances indicating that such a change is in a child's best interest. (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955-956 (*Brown & Yana*); *Lucio*, *supra*, 161 Cal.App.4th at pp. 1076-1077.) In each instance, the appellate court concluded that the modification ordered by the trial court did not amount to a change of physical or legal custody that required the trial court to find changed circumstances before modifying the existing order, and that the change was in the best interest of the child.

We distinguish the issue addressed in the cited cases—whether the trial court abused its discretion by failing to apply the changed circumstances rule to justify a change in a custody order—from the question of whether the parties must attend

statutorily mandated mediation to attempt resolution of a custody dispute before the court may even conduct a hearing on the matter. While both the changed circumstances rule and the statutory requirement that parties attempt mediation are grounded in the guiding family law principle of the child's best interest (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31; *Brown & Yana*, *supra*, 37 Cal.4th at p. 956; § 3170), they further that principle in different contexts. The parties in the cited cases were long past the mediation stage of family court proceedings. (See e.g., *Enrique M.*, *supra*, 121 Cal.App.4th at p. 1374 [parties had attended 17 private mediation sessions and five mediation sessions with Family Court Services]; *Birnbaum*, *supra*, 211 Cal.App.3d at p. 1511 [parties attended coparenting counselling which resulted in an evaluation and recommendation by a psychologist they had selected].) Whether the changed circumstances rule applies is an issue that arises when the trial court considers the sufficiency of evidence at a contested hearing. Additionally, the Supreme Court clarified in *Brown & Yana* that the changed circumstances rule applies only when a party seeks modification of a "final judicial custody determination" that has long provided continuity and stability in the custody arrangement, making it doubtful that the authorities cited by Shawn apply to his request to modify the temporary custody order before us, and further restricting the applicability of the definition of custody in those cases to a limited subset of custody disputes. (*Brown & Yana*, *supra*, 37 Cal 4th at pp. 955-956.)

In contrast, the requirement that the parties attend mediation arises in advance of any evidentiary hearing. As a practical matter, construing the language of section 3170 to apply only where a party requests a modification amounting to a change of legal or physical custody as described in *Birnbaum* and successor "changed circumstances" cases would require a determination in each instance by the trial court of whether the modification request fits within *Birnbaum's* definition, increasing court attendance for many parties. It could preclude mediation in many instances where the parties are disputing critical issues, such as whether the arrangement of time the children spend with

13

each parent should be modified, or whether to change the authority to make a particular health decision for a child from both parents to one parent. In short, such an interpretation of the term "custody order" in section 3170 would defeat the purposes of mediation as described in section 3161. By enacting section 3161, the Legislature determined that mediation would advance the best interest of children by reducing acrimony between the parties and facilitating agreements through the guidance of professionals. Shawn's proposed interpretation of section 3170 would not advance the children's best interest as it would further promote litigation, reduce the opportunity to reach mutual agreements, and fuel attendant litigation costs. We perceive no legal or policy justification to except Shawn's modification request from the mediation process, or to deprive the parties and the children of its benefits.

For these reasons, we conclude that Shawn sought a modification of custody orders as described in sections 3170 and 3175 that required the parties to attend mediation before the trial court conducted any hearing.

### 2. Section 3170 required mediation in this case.

Based on our determination that Shawn sought a modification of custody orders, we next consider whether the trial court erred when it failed to require mediation prior to hearing Shawn's request.

### a. Section 3179 did not relieve the parties from the mediation requirement.

Shawn argues that although the 2018 custody order resulted from an emergency screening, it should be deemed a mediated agreement that is governed by section 3179. That statute provides, "A custody or visitation agreement reached as a result of mediation may be modified at any time at the discretion of the court, subject to Chapter 1 (commencing with Section 3020), Chapter 2 (commencing with Section 3040), Chapter 4

14

(commencing with Section 3080), and Chapter 5 (commencing with Section 3100)."[7] As a matter of statutory interpretation, he asserts that section 3179 does not require the court to order parties to mediation under sections 3170 and 3175 prior to modifying a custody order if they have a mediated agreement in place. Specifically, as chapter 11, which includes sections 3170 and 3175, does not appear in section 3179, Shawn contends that the parties were not required to mediate their dispute prior to the court's hearing on his request to modify the existing custody order. Because the parties stipulated to the 2018 custody order as part of the emergency screening process, Shawn alleges the order was a mediated agreement under section 3179.

Shawn cites no appellate authority for his proposition. However, we need not decide whether section 3179 serves to waive the mediation requirement when a party seeks to modify an already mediated agreement. Shawn's argument fails because an examination of the mediation statutes under the Family Code and the trial court's local rules regarding the process for emergency screenings and mediations demonstrates that the July 2018 order was not a mediated agreement, but a stipulation to a recommended order. (Sup. Ct. Santa Clara County, Local Fam. Rules, rule 2(C)(7)(a).)[8]

Mediations in California family courts are governed by uniform standards of practice adopted by the Judicial Council and implemented through local rules of court. (§ 3162.) As mentioned above, the purposes of mediation are to "reduce acrimony" between the parties, to "develop an agreement assuring the child close and continuing contact with both parents," and to "effect a settlement of the issue of visitation rights," all in the best interest of the child. (§ 3161.) It is a process designed to facilitate cooperation by working with the parents to reach agreement.

___

[7] In the context of section 3179, the references to chapters are to specific chapters within division 8, part 2 of the Family Code (§ 3020 et seq.). Subsequent undesignated references to chapters within this opinion are to the same.

[8] Further undesignated references to local rules are to the Santa Clara County Superior Court's Local Family Rules.

Santa Clara County Superior Court has adopted the "confidential" mediation model described in section 3188. In a confidential mediation, the parties have a "private and confidential" meeting with the mediator. (Local rule 2(B)(4).) If they reach an agreement during the mediation, the mediator prepares the written agreement and sends copies to the parties for their review; the parties can then object to the terms of the mediated agreement, after which they must return to mediation, or proceed to a post-mediation hearing, as set forth in the trial court's local rules pursuant to section 3185. (Local rule 2(B)(5), 2(C)(1).)

Section 3188 itself distinguishes between confidential mediation and the emergency screening process. An emergency screening is a "preliminary and limited investigation" ordered by the family court and conducted by a staff member of Family Court Services "other than a mediator," where the court is concerned there are "serious safety risks to the child/ren[.]" (Local rule 2(C)(7)(a); see § 3188, subd. (a)(5).) The investigator provides "a recommendation to the court concerning temporary custody or visitation orders in order to expeditiously address those safety issues." (§ 3188, subd. (a)(5).) The outcome of this expedited process is a court order intended to address the safety of the children. While the parties can agree to the screener's recommendations, if they do not, the family court conducts a hearing at which the court thereafter issues a temporary custody order. (Local rule 2(C)(7)(b) & (c).) The primary goal of an emergency screening is not to facilitate an agreement between the parties, but to conduct an investigation resulting in temporary orders that ensure the safety of the child.

Contrary to Shawn's assertion that the parties effectively mediated the agreement though the screening process, the language of the screening order itself demonstrates that it was not the product of mediation. Despite Shawn's contention that the July 2018 order did not require "subsequent mediation," the order states otherwise: the parties were ordered to immediately register for parent orientation and to attend mediation eight weeks or more from the filing of the order. Based on the foregoing, we determine that the July

16

2018 order was not an "agreement reached as a result of mediation" for purposes of section 3179, but was a stipulation to temporary custody orders recommended through the emergency screening process. Thus even if we were to agree with Shawn that section 3179 exempts parties with extant mediated agreements from again attending mediation when there is a dispute regarding custody, the parties here had no such agreement in place.

### b. There was no other basis for the trial court to waive the mediation requirement.

Using the term "shall," the plain language of sections 3170 and 3175 required the court to set the contested issues for mediation before or concurrent with the setting of the matter for hearing. "Under general rules of statutory interpretation, 'shall' denotes something is mandatory. [Citation.]" (*Guardianship of C.E.*, *supra*, 31 Cal.App.5th at p. 1051.) Family Code section 12 explicitly defines "shall" as "mandatory." (See *ibid.*) "Recognizing that the adversary process can be destructive to the parent-child relationship and that a court order is not an effective way to influence parental attitudes and control behavior, the Legislature has enacted a framework for the mandatory mediation of contested custody and visitation disputes. ([Former] Civ. Code, § 4607[9]; [citation].) The system of 'private ordering' [fn.] contemplated by this statutory framework, which is much more likely than judicial fiat to acceptably reconcile conflicting desires of the parents and thereby serve the best interests of the child, deserves strong judicial deference . . . ." (*In re Marriage of Mentry* (1983) 142

---

[9] "[Former] Civil Code section 4607 provided in pertinent part: 'In any proceeding where there is at issue the custody of or visitation with a minor child, and where it appears on the face of the petition or other application for an order or modification of an order for the custody or visitation of a child or children that either or both such issues are contested, as provided in Section 4600, 4600.1, or 4601, the matter shall be set for mediation of the contested issues prior to or concurrent with the setting of the matter for hearing.' " (*In re Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1485, fn. 10.)

Cal.App.3d 260, 269.) " '[A]s a practical matter, the failure to set the dispute for mediation . . . is a bar to a hearing on all custody or visitation disputes. [Citations.]' [Citations.]" (*Hoversten v. Superior Court* (1999) 74 Cal.App.4th 636, 643.)

To address the mediation obligation here, Shawn alleges that Julia has failed to show that the parties did not comply with section 3170 prior to the hearing, contending the record is devoid of evidence that he did not participate in parent orientation, or that the parties did not mediate the issue prior to the hearing. Julia's attorney argued at the hearing that "the reason mediation hasn't happened is because [Shawn] did not follow the order issued on his own ex parte to do orientation so the parties could get mediation." Shawn contends this is argument, not evidence, citing *People v. Superior Court (Crook)* (1978) 83 Cal.App.3d 335, 341. However, Shawn did not object to this argument at the hearing. By failing to raise an objection, Shawn forfeited the claim that the argument lacks evidentiary support. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 280.)[10]

Despite the mandatory language of sections 3170 and 3175, Shawn argues that waiver is appropriate "in circumstances where there in an issue that relates to the child's health, safety, and welfare," citing section 3020. "[I]t is the public policy of this state to ensure that the health, safety, and welfare of children shall be the court's primary concern in determining the best interests of children when making any orders regarding the physical or legal custody or visitation of children." (§ 3020, subd. (a).) It is also the "policy of this state to ensure that children have frequent and continuing contact with

---

[10] Related to this issue, Shawn contends that the trial court did not order the parties to attend parent orientation or mediation. Rather, he suggests that a court clerk placed the stamp ordering the parties to mediation after the judicial officer signed the order. We need not determine whether the stamp was placed before or after the judge signed the order; under sections 3170 and 3175 the court was required to confirm that the parties had mediated the dispute before commencing a hearing regardless of whether it issued an order contemporaneously with granting Shawn's order shortening time.

18

both parents . . . and to encourage parents to share the rights and responsibilities of child rearing," unless such contact is not in the children's best interest. (§ 3020, subd. (b).) Where these two policies conflict, the court must make orders "in a manner that ensures the health, safety, and welfare of the child and the safety of all family members." (§ 3020, subd. (c).)

We agree that Shawn's request implicated the health, safety, and welfare of the children. But we do not decide whether these concerns might constitute good cause to waive mediation as there was not substantial evidence before the court in this case demonstrating an emergency that justified foregoing mediation entirely. Shawn knew about the impending arrival of his child well before seeking the requested orders from the trial court. The children had been unvaccinated by agreement of both parents for many years. There was not a COVID-19 vaccine available for the children at the time of the request.

Shawn further alleges that "[t]he backlog in appointments at large city FCS offices is not in dispute," thus implying that the parties could not timely complete mediation in advance of a hearing because of the urgency of the vaccination dispute. But there is nothing in the record indicating the trial court addressed a potential backlog in mediation appointments in the Santa Clara County Superior Court, or that such a backlog prevented the parties from mediating the case in light of concerns about the children's health, safety, and welfare. More importantly, the trial court could have explored the capacity of Family Court Services to conduct mediation on short notice, if it identified the vaccination of the children as an issue requiring immediate attention in their best interest. But no such measures were taken here.

Shawn also suggests that the court elected to forego mediation in this case in order to focus the court's resources "on first time appointments rather than multiple appointments by parents who continually cannot agree on anything concerning their children." The evidence in the record does not support Shawn's characterization of the

19

parties' intransigence. In fact, the parties had been able to agree on issues regarding the children in the past. They agreed about the children's vaccination status during the marriage; although Shawn states in his initial request for orders that he agreed only for the sake of keeping the marriage intact, at the hearing he indicated he changed his position upon doing further research, and because of the COVID-19 pandemic. During their dissolution proceeding, the parties stipulated to the 2018 custody order. The record before us does not reveal a history of disagreements between the parties. Rather, Shawn's request for orders reflects that he unsuccessfully reached out to Julia to see if she would agree to vaccinate the children prior to filing the motion. In her response, Julia stated a willingness to compromise. To the extent the trial court had any discretion to waive mediation on the belief that it would be futile, the record does not include substantial evidence of such futility.

### 3. *Julia demonstrated prejudice.*

Having determined that the trial court erred by failing to comply with section 3170, we now turn to the issue of prejudice. "Generally, [a party seeking review] must show that the error was prejudicial to compel reversal. [Citation.] Unless the error is reversible per se, we apply the prejudicial error rule even if the trial court failed to follow a statutory mandate. [Fn.] [Citation.] 'To establish prejudice, a party must show "a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached." [Citation.]' [Citation.] In the context of prejudicial error, 'probability' does not mean 'more likely than not, but merely a reasonable chance, more than an abstract possibility. [Citations.]' [Citation.]" (*Guardianship of C.E.*, *supra*, 31 Cal.App.5th at p. 1054.)

Julia argues that the trial court's error is reversible per se, asking this court to treat the error as a structural or jurisdictional error. Shawn counters that Julia waived this argument by failing to raise it in her initial writ petition. We need not reach the issue of Julia's potential waiver of a structural error argument, as we hold that Julia raised the

20

issue of prejudice in her initial petition, and sufficiently demonstrated that the trial court's failure to require mediation under sections 3170 and 3175 was prejudicial to her.

Julia alleges that the failure to afford the parties the opportunity to work with a professional mediator "had its cost," claiming that the trial court's error defeated the purposes of mediation, as set forth in section 3161, and served to exacerbate the acrimony between the parties, rather than reduce it, by "[unilaterally] stripping from her the ability to meaningfully participate in the vaccination decisions . . . ." Julia cites the fact the parties had previously both expressed their views about vaccination to the children, and the sudden change in course could have negative repercussions that might be lessened by working with a professional mediator.

Shawn disagrees that the lack of mediation prejudiced Julia, as he contends mediation would not have made a difference, given that vaccination is a "black or white issue" on which he believes the parties hold strong and steadfast views. The only evidence the trial court considered suggests otherwise. Shawn previously disagreed with vaccination, and then later changed his position. Julia stated in her pleadings that she was willing to negotiate a resolution, and that she did not have a blanket opposition to vaccinations.

Moreover, there is a clear benefit to mediation even in situations where the parents hold what at first blush appears to be strongly contrasting views. In *In re Marriage of Adams & Jack A.* (2012) 209 Cal.App.4th 1543, the trial court failed to enforce the parties' agreement to present custody disputes to a special master before seeking the court's assistance. The parents strongly disagreed as to which school would best serve the needs of their autistic child; "[t]he record suggests that each parent's deeply held views are well-intentioned and credible, and furthermore, that neither parent is clearly right or wrong." (*Id.* at p. 1568.) In determining that the trial court erred, the appellate court opined that the parents' dispute "was unlikely to be resolved absent (1) capitulation by one parent to the other, or (2) the intervention of a neutral third party or the court."

21

(*Ibid.*)  Citing section 3170's requirement that contested custody issues first be set for mediation, the appellate court adopted the view that " 'attempting to resolve a parental disagreement through some combination of education, counseling, negotiation, and mediation. . .' " was a "desirable first step" when facing the "expense and potentially polarizing effect" of other options.  (*Ibid.*)

By failing to enforce the mediation requirement of section 3170, the trial court deprived the parties of the opportunity to reach an agreement in the best interests of the children, or otherwise receive the education and counseling afforded by the assistance of a non-adversarial mediator.  Given the parties' prior history of agreement, Julia has shown a "reasonable chance" that mediation would have resulted in a different outcome than the orders made by the trial court.  As such, we will issue a writ of mandate directing the trial court to vacate its orders and require the parties to mediate the vaccination issue before holding a hearing, if such a hearing is necessary after mediation.[11]

## III.    DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to (1) vacate its order granting real party in interest the specific authority to determine the timing and appropriateness of vaccinations for the minor children; (2) within 15 days of the issuance of the remittitur, set mediation in accordance with Family Code sections 3170 and 3175; and (3) upon completion of mediation, proceed with a hearing if requested by either party on real party in interest's request for orders as appropriate under the relevant statutes and rules of court.  Upon issuance of the remittitur, this court's stay order is vacated.  Each party shall bear their own costs in this original proceeding.

---

[11] As we find the court erred in hearing Shawn's request without requiring mediation under section 3170, we need not consider Julia's contention that the court erred in denying her request for a long-cause evidentiary hearing.  The parties can address any evidentiary issues with the court if they require a hearing after mediation.

22

_____
Greenwood, P. J.

WE CONCUR:

_____
    Grover, J.

_____
    Danner, J.

Sullivan v. Superior Court
H048294